No. 14,106.

## STEPHEN W. CHILDS vs. KEETE LOCKETT, SHERIFF, ET AL.

### SYLLABUS.

1. A party who has entered upon and is in undisturbed possession of land purchased by him occupies a different position from what he would if he had not yet taken title or possession and was being proceeded against to compel him to do so.

2. A purchaser of land who is in undisturbed possession thereof cannot enjoin executory proceedings issued to enforce payment of the purchase price, on the ground that he acquired no title to his purchase. He cannot hold the property and possession thereof under the title, and prevent the vendor from being paid through sale of the property.

3. A probate sale expressly made upon the petition of tutrix acting as administratrix of a succession to pay the purchase price of property due in its entirety by the succession and secured by special mortgage and vendor's privilege on the property, sold, conveys title to the purchaser, though the sale was not made upon the recommendation of a family meeting in behalf of the minor—heir of the deceased father. Property ordered to be sold for cash and advertised and sold for cash, is not less a cash sale because after the sale the purchaser, by reason of special facts, does not pay the cash.

4. A probate sale of community property in the succession of a father to pay a community debt secured by special mortgage and vendor's privilege upon it, conveys the property to the purchaser thereof free from mortgages standing upon it in the name of the deceased.

5. Community creditors are to be paid by preference and priority out of the proceeds of the sale of community property, over the individual creditors of either of the spouses.

6. The mortgage right of minors upon the property of their natural tutrix, upon community property, are not greater than the rights of the mother herself in that community, and that interest is limited to the residuum after payment of the community debts. (Heirs of Baillio vs. Poisset, 8 N. S. 336.)

7. The minor heirs of a father, to whom the mother has been confirmed natural tutrix, cannot enforce the general mortgage which the law gives them against her as tutrix upon her interest in specific community property, which has been sold in the succession of the father to pay a community debt secured by vendor's privilege. The sale extinguishes any right which the wife had in it. The purchaser at such probate sale has no legal ground for fearing disturbance from such a mortgage, particularly when aware of the situation at the time of the purchase.

8. The taking by a natural tutrix of the legal title to certain property does not, of necessity, cause that property to be affected by a general mortgage in favor of her minor children. (Succession of Manson, 51st Annual, 130.)

A PPEAL from the Eleventh Judicial District Court, Parish of Red River—*Porter, J.*

*Egan* and *Scheen,* for Plaintiff, Appellant.

*Pierson* and *Pierson,* for Defendants, Appellees.

## STATEMENT OF THE CASE.

The opinion of the Court was delivered by

NICHOLLS, C. J. On the 5th of November, 1889, Robert Stothard purchased a farm, known as the "Bonnie Doon," from L. H. Howard, agent for some absent owners, for the price of three thousand and fifty dollars ($3,050), for which he paid in cash only twenty-five dollars ($25), the balance being payable in three instalments, represented by promissory notes secured by special mortgage and vendor's privilege, to-wit: nine hundred and seventy-five dollars ($975) in two notes, payable January 1st, 1890; one thousand dollars ($1,000) payable January 1st, 1891, and one thousand and fifty dollars ($1,050) in two notes payable January 1st, 1892.

Stothard died in September, 1890, leaving all of these notes unpaid.

An inventory of the succession was taken on September 25th, 1890, and recorded on October 1st, 1890.

The widow, Mrs. Emma R. Stothard, was appointed and confirmed natural tutrix on the 1st of October, 1890.

On February 24th, 1892, the tutrix filed a petition in which she alleged that there were some debts and mortgages left by the deceased upon the property falling to the minors and belonging to the community between herself and her deceased husband, some of which she had managed to pay off in part; that there still existed outstanding indebtedness against said property and which it was necessary to provide for; that she was without the necessary means of the said estate to pay the same or to administer the said property for the current year, 1892, and to support and educate the minor children, and that she should be authorized by a family meeting to obtain said loan, and, in order to do so, to execute a special mortgage upon the real property held in common between herself and her children; one of whom, E. Stewart Stothard, was then a major. She accordingly prayed for the holding of a family meeting to so authorize her.

A family meeting was ordered to be convoked and was subsequently held. Its recommendations were in accord with the applications of the tutrix, the *proces verbal* stating that the members found it necessary, for the reasons set forth in the petition, which reasons they endorsed and approved. The proceedings were approved and promulgated.

On the 24th of February, 1892, Mrs. Emma Stothard, as tutrix and widow in community, and E. Stewart Stothard, the major heir of Robert Stothard, under authority of the proceedings of the family meeting, executed before the Clerk of the Parish of Red River, *ex officio* notary, a *solidary* promissory note in favor of John J. Gragard, for two thousand dollars, with eight per cent. per annum interest from date until paid, payable on or before the 1st of January, 1893, and secured payment of the same and the attorneys' fees by special mortgage, with the clause *de non alienando,* upon the "Bonnie Doon" place. The act recited that the widow, the minors and E. Stewart Stothard were indebted to John J. Gragard in the full sum of two thousand dollars for cash borrowed from him under the authorization of the family meeting and the order of court thereon.

On March 12th, 1896, Mrs. Emma R. Stothard, natural tutrix, and as such administering the succession of Robert Stothard, filed a petition in which she alleged that on the 5th of July, 1889, her husband acquired, on the terms of credit specified in the act of sale from L.

M Howard, agent, the farm known as the "Bonnie Doon" place, in which was reserved a special mortgage and vendor's privilege to secure payment of the price.

That the said succession, as well as herself, had been unable to pay or discharge the said price; that she had procured John J. Gragard, who held a second mortgage on said property, to pay, with legal subrogation, a large portion of said purchase price to the said vendors, and there was now due him on said purchase price the sum of seventeen hundred dollars, besides interest; that there still remained due him on said purchase price the sum of seventeen hundred dollars, besides interest, and that there still remained due to the vendors on said purchase price the sum of one thousand dollars, besides interest; that she had no means in her hands to pay said indebtedness, which was long since past due, and said creditors were urgent to receive pay, and refused to extend the time for payment. That it was absolutely necessary that she be authorized by order of Court to make and should make a sale of said property, in order to make payment of the purchase price. She prayed for such order.

An order was accordingly given to sell the "Bonnie Doon" place at auction for cash. Should it not be sold for cash, then on twelve months' credit, according to law. The property was at that time (by recorded act) leased to E. L. Kent for the years 1896, 1897 and 1898, for which the lessee had executed his rent notes.

The property was advertised by the Sheriff to be sold for cash, and at the offering on the 15th of April, 1896, it, together with the lease notes, was adjudicated to Mrs. Emma R. Stothard, individually, for the price of twenty-eight hundred dollars, that being its appraised value. In the Sheriff's deed made on the 28th of April, 1896, it is stated that the purchaser in compliance with her bid had paid the Sheriff the sum of forty-one dollars in full for all costs, and had, in her capacity as natural tutrix of the minors, administering said succession, as such, delivered to him the balance of the purchase price, to-wit: the sum of twenty-seven hundred and fifty-eight dollars, the same being payable to her in her capacity as administratrix for said succession.

On the 30th of April, 1896, by act before Pierson, Notary Public. Mrs. Emma R. Stothard sold the "Bonnie Doon" plantation, together with the lease thereof, to Stephen W. Childs for the price of three thousand seven hundred and twenty dollars, payable in five annual

instalments of different amounts, payable in January of the years 1897 to 1901, inclusive; the instalments bearing interest at eight per cent. per annum from the maturities thereof until paid. These instalments of price were represented by five promissory notes of the purchaser, Childs, for the different amounts and payable to the order of the vendor, and by her endorsed in blank were secured as to payment and attorneys' fees by special mortgage, with the clause *de non alienando* on the property sold. The vendee, Childs, in order to further secure the payment of the purchase notes, pledged the lease notes which Kent, the lessee of the place, had given for the lease of the property for the years 1896, 1897 and 1898, unto and in favor of any future holder of the notes. The parties waived and dispensed with the production of a certificate of mortgages and exonerated the Notary from all liability for non-production of the same.

On the same day, April 30th, 1896, Childs gave a receipt for the rent notes to John J. Gragard, each of which was for the sum of three hundred and fifty dollars, and which were due on the 1st day of December, 1896, 1897 and 1898, and were payable to the order of Mrs. E. R. Stothard and endorsed by her in blank. In this receipt it was recited that these notes had been specially pledged to Mrs. Stothard in her act of sale of that day to him; that the notes were to be collected by Childs and proceeds accounted for to said J. J. Gragard.

Gragard having died, Edward Pierson was appointed administrator of his succession.

On the 13th of September, 1900, Edward Pierson, administrator of Gragard's succession, applied in the District Court for Red River Parish for the seizure and sale, under executory process, of the "Bonnie Doon" place. The order was granted and, under writ of seizure and sale, the property was seized.

The writ issued upon the allegation of the administrator that the succession of Gragard was the holder of four notes which he annexed to his petition, which had been executed by Stephen W. Childs for the payment of the purchase price of the "Bonnie Doon" plantation, bought by him from Mrs. Emma R. Stothard at the sale above referred to.

The petition described the notes, and alleged that Childs was indebted to the succession of Gragard for their amount; that three of the notes were past due and unpaid and had not yet matured; that they were secured by special mortgage and privilege. The petition contained the customary averments of petitions for executory process.

The property was ordered to be sold partly for cash and partly on credit according to law.

Childs, the maker of the notes, obtained an injunction staying the sale of the property. In his petition applying for the same he averred that the succession of Robert Stothard was largely indebted to John J. Gragard; that Gragard in his lifetime was the owner of large indebtedness for the purchase price of the property seized. That Stothard having died, his widow having administered said succession in her capacity as natural tutrix, presented a petition to the District Court and had said property sold for the purpose of paying the said debts due Gragard; that the said debts due Gragard were a first mortgage for $850 and a second mortgage for $2,000. That the Court ordered the property sold for cash to pay said debts, but the property was not sold for cash as was authorized by the Court, and no debts paid with the proceeds, nor was there any consideration for the sale, and said sale not having been made as authorized by the Court, was null and void and Mrs. Stothard therefore could not make a good and valid sale. That before any proceedings had been taken to sell said property by Mrs. Stothard, tutrix, John J. Gragard applied to him (Childs) to purchase said property, and for him (Childs) to become the debtor of Mrs. Stothard: that the amount he was to pay for the said property was agreed upon with Gragard, and that, after the agreement had been made. Gragard and Mrs. Stothard employed J. F. Pierson, an attorney at law, to have made to petitioner a valid and good title to said property, free from any incumbrances other than the vendor's privilege which was to be retained for the purchase price.

That, relying upon the representations of all said parties and of said attorney at law. that he was acquiring a good and valid title to said property, free from all incumbrances. he executed his notes for the purchase price of said property to Mrs. Stothard or any future holder, but in reality to J. J. Gragard. with whom he had made the trade for the property, and who he understood was to receive the said notes in lieu of the indebtedness due to him by the succession of Robert Stothard. and cancel the prior special existing mortgages. That Gragard never did receive the notes given by him (Childs) in lieu of the said indebtedness of Robert Stothard. but only took them as collateral security for the indebtedness existing, and still holds and owns the said original notes for the purchase price, and that the two special mortgages were never canceled and satisfied; and, while Gragard was

a party to the whole transaction, he never carried out the terms of their agreement by having canceled the special mortgages and other incumbrances.

That said parties acted in bad faith and fraudulently sold said property, burdened with two special mortgages and with a legal mortgage resulting from the recording of the abstract of inventory in the tutorship proceedings of the minors of Robert Stothard, in the mortgage records of the Parish of Red River, for more than $9,000, and which was also recorded prior to the sale made to him. That the mortgage records showed still standing against this property the two special mortgages for $2,050 and the legal mortgage for more than $9,000 in favor of the heirs of Robert Stothard, and the natural tutrix had never made a settlement with said heirs in whose favor this legal mortgage exists. That some of the heirs have already threatened to enforce the legal mortgage in their favor against the property to the amount due them. That he did not know what amount might be due said heirs, but that said incumbrance was still standing against said property and he had been threatened with eviction by the enforcement of the legal mortgage.

That, relying on the representations made to him, that he thought the title good, when he first became informed that it was burdened with the special and legal mortgages, he notified Gragard, with whom he had made the trade, that the same existed and that it was his duty to have the same removed and the title perfected, which Gragard had refused to do. That Gragard was not a purchaser in good faith before maturity of the notes, but a party to said transactions, and that he only holds the notes as collateral security, and they still remain the property of Mrs. Stothard. That the consideration for the notes and mortgage was a good and valid title, free from all incumbrances, and the consideration for the notes had failed, on account of the existing special and legal mortgages, and the defective title arising therefrom and the sale. That neither in law nor equity was the plaintiff entitled to collect said notes until the mortgage resting upon his property had been canceled and satisfied and he (Childs) quieted in his title and freed from threatened eviction from the property; that he was entitled to an injunction to preserve his rights. He prayed for an injunction directed to the Sheriff and to Pierson, administrator of the succession of Gragard, restraining them from further proceed-

ing to seize, advertise and sell said property. He prayed for citation on the first said parties.

That on a final hearing the writ of injunction be perpetuated and that he have judgment prohibiting the administrator from further proceeding in the collection of said notes sued on until said mortgages and incumbrances shall have been removed from the property, and until he shall have been given a clear and unincumbered title and his danger of eviction had been removed. He prayed for all necessary orders and for general relief.

The only parties to the litigation were the plaintiff, the sheriff and the succession of Gragard. The administrator of Gragard's succession, under reservation of exceptions, answered. After pleading the general issue, he admitted that Mrs. Stothard administered the succession of Robert Stothard as natural tutrix. He averred that said succession was indebted in a large sum to John J. Gragard for the purchase price of the Bonnie Doon place, which Stothard had purchased; that the object of Mrs. Stothard's application made to the Probate Court was to pay the large indebtedness due Gragard, then amounting to more than its value, and that it was sold for that purpose.

He averred that the succession was really benefited thereby. He admitted that before the probate sale of the place, Gragard negotiated with the plaintiff to become a purchaser of the same on advantageous terms for a sufficient price to cover the indebtedness of the succession to him; that Mrs. Stothard became the purchaser at the probate sale for the purpose of making the title over to plaintiff on the terms and at the price set forth in the act of sale from her to him, and that the rent notes of Kent, the lessee, and the purchase notes were turned over to Gragard with the view of providing for the payment of the debt of the succession to him and the ultimate discharge of the succession from said indebtedness.

He avers that this arrangement was made in good faith and in the interest of the succession which was largely benefited thereby; that the property at that time could not have been sold in the regular course for a sufficient sum to satisfy the indebtedness of the succession of Gragard, and that the arrangement with the plaintiff was to secure a price for the property which would satisfy said indebtedness and leave the residue of the property of the succession disencumbered from said indebtedness. He admitted that he holds the purchase notes of the plaintiff, Childs, for the payment of the indebtedness of the

succession of Stothard, and that payment by Childs of the notes in
suit will discharge the indebtedness of that succession to the succession
of Gragard. He specially denied that plaintiff was threatened with
eviction from the property referred to, or that he had any just or legal
grounds to fear or apprehend such eviction, if he pays his own notes,
as promised, and complies with his own obligations. Assuming the
position of plaintiff in reconvention, he alleged that the injunction
had been illegally taken out; that the succession had been greatly in-
jured thereby, and he prayed for its dissolution, with damages *in solido*
against the plaintiff and the sureties on the injunction bond.

The District Court rendered judgment in favor of the succession
of Gragard and against the plaintiff.

It decreed that the demands of the plaintiff be rejected; that the
writ of injunction which had been issued be dissolved and set aside,
with leave to 'the Sheriff and the defendant administrator to proceed
with the execution of the writ of seizure and sale, which had been
enjoined.

It gave judgment in reconvention in favor of the succession of
Gragard against the plaintiff for the sum of two hundred and fifty
dollars for attorneys' fees incurred in dissolving the injunction, and
the sum of sixty-five dollars for keepers' fees and four dollars for
advertisement and judgment for costs.

Plaintiff appealed.

The facts of this case appear fairly well from the pleadings of the
different parties. In November, 1889, Robert Stothard purchased the
Bonnie Doon farm for the price of three thousand and fifty dollars,
of which he paid only twenty-five dollars cash, the balance being repre-
sented by notes secured by special mortgage and vendor's privilege on
the property.

He died in September, 1890, leaving these notes unpaid   The prop-
erty was community property and the debt a community debt.   The
widow of Stothard qualified as natural tutrix of the minors,issue of
her marriage, and as such administered the succession. An inventory
of the succession property had been taken and recorded prior to her
appointment as tutrix.

John J. Gragard had been the commission merchant of Stothard
and continued to be that of the tutrix after his death.

In February, 1891, he took up the two notes, aggregating $975,
which became due in January, 1890, and canceled to that extent on

the records the mortgage and privilege which secured payment of the price of the plantation.

In 1892 Mrs. Stothart executed a special mortgage on the Bonnie Doon farm to secure this debt to Gragard; Stewart Stothart, one of the children of Robert Stothart, who had reached majority, joined in this mortgage, which was executed upon the recommendation of a family meeting and an order of Court homologating the same.

At that time the instalments of the purchase price, to the amount of $1,050, which fell due in January, 1892, was outstanding. Gragard took these notes up, so that he had paid the entire purchase price of the property with the exception of twenty-five dollars.

In 1896 the Bonnie Doon farm was sold by the Sheriff under an order of the District Court, upon the petition of the tutrix, to pay debts. and evidently under her pleadings to pay this debt to Gragard.

In the meantime the plantation had been leased to E. L. Kent, for 1896, 1897 and 1898, for which he had given rent notes. At the Sheriff's sale referred to the property with the rent notes were adjudicated to Mrs. Stothart individually for the sum of twenty-eight hundred dollars. She paid to the Sheriff the costs of the proceeding and gave him her receipt, as tutrix administering the succession, for the balance of the price of adjudication. The rent notes were at the time held in pledge by Gragard for payment of her debt.

The title having been placed in the name of Mrs. Stothart, she, on the 30th of April, 1896, sold the property, with the rent notes, to the plaintiff, entirely on credit, the price being represented by the purchaser's promissory notes for different amounts payable at different times at extended intervals, secured as to payment by special mortgage and vendor's privilege on the property. After this sale Gragard delivered the rent notes to Childs under an agreement that the latter should collect the same and transmit the proceeds to Gragard to be by him applied *pro tanto* to the payment of the debt of the succession to him, and this was accordingly done.

It appears that before this Sheriff's sale took place, an agreement had been entered into between Gragard, Mrs. Stothart and Childs in regard to the proposed sale. As Childs did not go upon the stand as a witness, and Gragard has in the meantime died, the precise character of this agreement is not shown, but it is fair to assume that what afterwards took place was done in execution of the same. Childs, in his petition for injunction, admits the existence of an agreement.

After Mrs. Stothart had transferred the property to Childs, she turned over to Gragard the promissory notes which he had given for the price

Childs not paying the notes, the administrator of the succession of Gragard reciting the facts and annexing the notes, caused the property to be seized by executory process under an order of the District Court. Childs enjoined the sale, praying that the administrator be prohibited from further proceeding in the collection of the notes sued on until all mortgages and encumbrances on the property shall have been removed from the property, and until he be given a clear title and unincumbered and his danger of eviction has been removed. In his petition for injunction he referred to the sale of the property by the Sheriff at which Mrs. Stothart became the adjudicatee, declaring it null and void for the reason that it had not been authorized to be made by advice of a family meeting in behalf of the minors, and that it had not been sold for cash as the Court had ordered it to be sold; he averred that Mrs. Stothart had acquired no title to the property at the sale, and could not and had not conferred title to him; that there was danger of his being evicted from the property of the children of Stothart, and that the consideration of his notes had failed. These allegations are followed up by no prayer predicated upon them. He does not offer to return the property, praying that the sale to him be set aside and that his notes be canceled and returned. In his petition he refers to the fact that Mrs. Stothart had been appointed natural tutrix of the minors; that an inventory of the property of the succession had been recorded showing property to an amount of more than nine thousand dollars, giving rise to a general mortgage for that amount on all the property of the tutrix and on this particular property.

That there was danger to himself from the possible and probable enforcement of this mortgage, against which danger he was entitled to be fully protected by non-enforcement of his notes until the danger had been removed; that he had been threatened with a suit in enforcement of this general mortgage. Childs took possession of and has been and now is in undisturbed possession of the property he purchased. There is nothing in the record to indicate that in the future children of Robert Stothart propose to attack the sale to him, and nothing to show that they will ever undertake to enforce any mortgage which they may have against their natural tutrix upon this particular prop-

erty or any portion of it. The evidence shows that she has other property. The plaintiff has never personally paid a cent upon his purchase price, though during his ownership the property itself has paid the amount represented by the rent notes of Kent, the only amount paid upon the property, either by Stothart or his succession, has been the sum of twenty-five dollars. All the balance has been paid by Gragard.

The succession of Gragard is not seeking in the present proceeding to obtain a personal judgment against Childs. It is a proceeding directed against the Bonnie Doon plantation and substantially and practically (though not in direct form) a proceeding to make that property itself pay the price which Robert Stothart had agreed and bound himself to pay for it when he purchased it. Plaintiff avers that Mrs. Stothart acquired no title through the Sheriff's adjudication to her, for the reason that it was not sold for cash, as it was directed to be sold by the Sheriff, and because the sale was not made under advice of a family meeting. (He refers the Court to Succession of Weber, 16 Ann.) In that case defendant, after becoming the adjudicatee of property of a succession, refused to carry out his agreement, and suit was brought to compel a specific performance. The grounds which are set up in the present proceeding might have been deemed sufficient to justify him in not taking title, had that been the issue here, but he has taken title and gone into possession thereunder, and that fact alters the situation materially from that occupied by the parties in the Succession of Weber. The plaintiff is mistaken in affirming that the property was not sold for cash. It was so adjudicated. The fact that after the adjudication the price was not paid cash is something other and different from its not being sold for cash. Had any third person become the adjudicatee he would unquestionably have been compelled to comply at once with his bid. An adjudicatee at a sale may occupy such relations toward the property sold or towards the parties who are to receive the money arising from the sale as will justify the Sheriff, and, in fact, sometimes prevent him from enforcing a cash payment of the bid. That is a matter of frequent occurrence. The plaintiff urges that there is danger of eviction from a claim made for the property by the children of Stothart. Let us vary the situation somewhat and see how those children stand in respect to this property. Let us suppose that Gragard had been still alive and purchased, himself, at the Sheriff's sale, and Stothart's children had

brought a direct action against him to recover the property. They would in such a suit occupy the same position as did the children of Ingram in the case of Ingram vs. Laroussini, 50 Ann. 78.

Ingram had purchased property for which he had not paid a cent up to the time of his death, the price being represented entirely by his promissory notes secured by special mortgage and vendor's privilege. Thompson acquired these notes. The widow qualified as tutrix, and at her instance the property was sold to pay debts. Thompson purchased at the sale, and subsequently sold to Laroussini. The children of Ingram, without offering to pay the purchase price due by their father, brought an action against Laroussini to recover the property, urging various objections against the Sheriff's sale, carrying with them, it was maintained, the nullity of the sale. Laroussini called Thompson in warranty. In deciding that case, this Court said: "Plaintiffs' demands are utterly without equity. At the sale which they seek to have declared null the holder of the vendor's privilege notes (representing substantially the rights of the vendor himself) by purchasing the property simply regained the ownership of the property, on which not one dollar has been paid up to the present day. If the sale passed no title to the adjudicatee, plaintiffs' proposition is that they can wrench this property out of the ownership and possession of the purchaser through the law, without paying a cent for it.

"The law works out no such result through force of a provision in a statute which was intended to protect the actual interest of minors, and not to enable them to enrich themselves at the expense of their father's creditors."

What was said there in a direct action for the annulment of a sale by the heirs of Ingram can be said with additional force to one who, being in undisturbed possession of property which had been sold at a succession sale to pay its price due by the deceased and which had subsequently purchased, under substantially and practically an agreement to pay that price himself, should seek to attack collaterally his own title and to avoid carrying out his own obligations by imagining what the heirs of the original purchaser might attempt hereafter to do.

We need not specifically refer to the difficulties which the heirs of Stothart would encounter were they to bring such an action, nor to the defenses by which the present plaintiff could resist the attack upon the title. It is sufficient to say that plaintiff's apprehensions, under the circumstances of this case, are not of character such as to warrant him

in preventing the sale of the property to pay practically the original price due upon it.

The plaintiff urges that he is likely to be evicted from the property through an action by the minor heirs of Stothart in enforcement on this property of the general mortgage securing proper tutorship which the law has given them on her property.

We have already said that there is no evidence of any intention on the part of those heirs to attempt to enforce their mortgage on this property under the relations· which their father, their mother and themselves have stood and still stand towards it. It must be remembered that not only did the debt held by Gragard represent the price of the property which had been agreed to be paid by Robert Stothart and which was secured by special mortgage and vendor's privilege thereon, but that that price was a community debt resting on community; that community debts are paid by preference and priority out of the proceeds of community property; that under a mortgage attaching to the wife's interest in community property the rights of the mortgagee are limited to what may remain due after payment of the community debts and a liquidation of the community (8 N. S., 336; Heirs of Baillie vs. Poisset); that when community property is sold in the succession of a father to pay community debts, the purchaser takes it free from any general mortgage resting on it in favor of the heirs of the father by reason of the mother having, prior to the liquidation of the community and the payment of community debts, been appointed and confirmed as their tutrix. Their rights are subordinate to the rights of the community creditors.

Plaintiff says that Mrs. Stothart's having taken the title makes a difference in the situation, but we do not think so. Neither she nor the heirs can by any act of theirs cut off the rights of the community creditors; besides, on this particular instance, she was never really the owner of the property through the sale. Her taking title was simply a step in the direction of carrying out at once the agreement which was made between Gragard, Childs and herself individually and as tutrix that Childs should become the owner of the property, give his notes therefor, and, on payment of the same, the debt of the succession to Gragard should be extinguished. The fact that a tutor may stand on the records as the owner of certain property does not carry with it necessarily that the general mortgage securing the fidelity of

her tutorship in favor of her children should strike it. (Succession of Manson, 51 Ann. 130.)

We are of the opinion that Childs knew perfectly well the exact situation and took title and entered into obligations advisedly in the premises. He waived the usual certificates of mortgage showing that instrument was not needed by him for information. Plaintiff complains that Gragard did not cause the registry of the mortgages held by him to be erased, but we see no force in that objection. If the Sheriff's sale was a valid probate sale, these mortgages were extinguished thereby and transferred to the proceeds; if not, their continuing upon the records could not injure and might be useful to the plaintiff. Be that as it may, if he pays his own notes, he can control the question of their registry.

For the reasons assigned, it is ordered, adjudged and decreed that the judgment appealed from is correct, and it is hereby affirmed.

Rehearing refused.

MR. JUSTICE MONROE concurs in the decree.

MR. JUSTICE PROVOSTY, not having heard the argument, takes no part.