HAMITER, Justice.
In the succession proceedings of Samuel B. Dawson, deceased, his duly qualified executrix, Mrs. Ida G. Dawson, who was also his third wife, adjudicated in two sales, pursuant to an order of court and for the purpose of paying debts, almost all of the succession property. The first sale was to the Federal Land Bank of New Orleans and covered a tract of land containing approximately 508 acres. The second sale was to the said Mrs. Ida G. Dawson, individually, and it purported to convey most of the remaining assets, both real and personal. An attack on each of the sales is made in this cause, plaintiffs, who are the children of decedent’s first and second marriages, asserting that such was an absolute nullity.
The district court, following extensive litigation, rejected the demands of plaintiffs and dismissed the suit at their costs. They are appealing.
As stated in their briefs to this court appellant’s counsel now contend:
1. The sale to the Federal Land Bank was null and void as the property sold for less than two-thirds of its appraised value.
2. The sale to Mrs. Dawson was null and void for the same reason and for the additional reason that she failed to comply with the terms of her bid.
3. The entire proceedings in the succession of Samuel B. Dawson show a *893 scheme on the part of Mrs. Ida G. Dawson to acquire ownership of all of the property of the succession, and to deprive plaintiffs of their legitime.
We consider these contentions in the order in which they are listed.
The record discloses that the 508-acre tract of land was appraised in the succession inventory at $5,080, and that under the terms fixed by the court it was to be sold for not less than two-thirds of such value, or $3,386.67. However, the deed evidencing the sale thereof recited in part that the property “was adjudicated to the Federal Land Bank of New Orleans, it being the last and highest bidder for the sum of Three Thousand Eighty-six and 67/100 Dollars * * *” (this sum was $300 less than the required two-thirds of the appraisement); and the same figure was used by the executrix in her final account, she stating therein that such amount was “reserved by Federal Land Bank to be applied to their mortgage.” Nevertheless, to our minds, it is certain that the figure thus used in the deed and final account represented a typographical error; and that the actual bid was, and the property sold, for $3,386.67, as required.
In the deed, immediately following the stated figure, was the further recitation “which was two-thirds of the inventoried value of said property.” Too, it hardly seems likely that a bid for an amount involving odd cents (sixty-seven cents) would have been made if it was not in keeping with the requirement. Again, the attorney representing the purchaser, who-had had much experience in probate sales. (H. H. Kilbourne, later Judge of the Twentieth Judicial District Court and recused in the trial of this cause), recalled the incident and testified emphatically that the property was adjudicated for two-thirds of its appraised value (over objections this, evidence was admitted because of plaintiffs’ allegations of fraud); and, in connection with his testimony, there was introduced a letter written to his client in which he stated: “This is to advise you that according to your telephoned instructions, I have this day bid in the Dawson property covered by your mortgage for two-thirds of its appraised value.” Finally, it may be observed that there was no-good reason for the Bank’s bidding less, than two-thirds of the property’s appraisement ($3,386.67), for the balance on the-mortgage held by it greatly exceeded that, amount. In fact, a bid representing the-entire balance due it could have been made without its being compelled to pay any funds to the executrix.
Alluding to this circumstance, and announcing the same conclusion that we do-above, the trial judge stated in his written reasons for judgment: “As was testified by Judge Kilbourne, I am satisfied that the Federal Land Bank, to which there was a. balance due on the 508.85 acres of land of the sum of $4,655.60 actually bid for *895 this land % of its appraisal value. It could well- have bid the whole balance due. The recitation in the final account that it bid only $3086.67 or $300.00 less than [% •of] the appraisement, in the light of Judge Kilbourne’s testimony obviously, was an error. * * * ” (Brackets ours.)
The trial judge further concluded that even if the recitation were correct the discrepancy amounted to a harmless informality (no injury or fraud having been shown) which was cured by the prescription provided in L.S.A. Civil Code Article 3543. However, we need not and do not review this legal pronouncement in view ■of our conclusion on the facts.
Neither is it correct to say (notwithstanding the apparent accord among all counsel to the contrary) that the succession assets covered by the second sale to Mrs. Dawson (individually] failed to bring two-thirds of their appraised value. Of the property so sold the real estate was appraised at $899.50 and the personal property at $1,773 — a total of $2,672.50. Two-thirds of this amount is $1,781.67, the exact sum bid by Mrs. Dawson for the property, as the deed states.
In agreeing that the total appraisement was $2,789 (or $116.50 more than we show above), and that Mrs. Dawson’s bid was $77.66 less than the required two-thirds thereof, counsel overlooked the fact that with respect to an undivided one-seventh reálty interest inventoried as belonging to the first community, and appraised at $233, only one-half thereof (valued at $116.50) belonged to decedent and was conveyed by the sale, as is specifically recited in the deed. The remaining one-half of the one-seventh interest could not be, and it was not, sold for the reason that the children of the first marriage had inherited it from their deceased mother. Counsel, in their computation, obviously took into consideration the appraised value of such unsold one-half of the one-seventh (one-fourteenth) interest; and this accounts for the alleged discrepancy of $77.66 (two-thirds of $116.50).
The contention that Mrs. Dawson did not comply with the terms of her bid, in that she failed to pay cash for the property, is likewise without merit. In her capacity as executrix of the succession she occupied the position of a creditor with respect to the funds owed by her individually in making the purchase; and it was only natural and proper that she retain the money representing her bid, using it as she did toward the extinguishment of the succession debts. See Childs v. Lockett, 107 La. 270, 31 So. 751. On this point the case of In re Union Central Life Insurance Company, 208 La. 253, 22 So.2d 63, cited and relied on by plaintiffs, is inapposite. The purchaser at the succession sale therein had no claim whatever, as a creditor or otherwise, to the purchase price which she agreed to pay.
In charging that Mrs. Dawson “schemed” to acquire all of the property of *897 the succession, plaintiffs concede that “fraud will not be presumed, and must be proved” (they do not recognize also another legal principle that the proof must be exceptionally strong). Then, to quote from the brief of their counsel, they say: “As to the 508-acre tract it cannot be seriously disputed but that her purpose and intention was to sacrifice the property to the Federal Land Bank and then to retain control of it under a lease arrangement and finally to bring about the series of steps under which she re-acquired the property free from any claim which might be made by the present heirs. * * * ”
For some four years after the succession sale to the Bank, according to the record, Mrs. Dawson held possession of the 508-acre tract under rental agreements. At the expiration of that period the Bank sold it to a Mrs. Laura LeBlanc (a close friend and a companion of Mrs. Dawson who continued to hold possession) for a consideration of $4,000, of which $800 was paid in cash and the balance was represented by an installment note of the purchaser secured by a mortgage and vendor’s lien. Approximately nine months later Mrs. LeBlanc conveyed the property to Mrs. Dawson who assumed the mentioned mortgage and vendor’s lien; and in the deed the former declared “that all payments of said property purchased by me as aforesaid from the Federal Land Bank of New Orleans, La., were and have been made by the said Mrs. Ida G. Dawson.”
But from these transactions the perpetration of fraud is not necessarily to be inferred, particularly in view of certain surrounding circumstances. To begin with the sale to the Bank was public in nature; and decedent’s heirs, who knew of the succession proceedings (one of them unsuccessfully opposed Mrs. Dawson’s appointment as executrix) had the opportunity of bidding (and, very likely, of purchasing for a price equal to the balance then due under the Bank’s mortgage). Furthermore, Mrs. Dawson, if she had desired and had been financially able, might well have acquired the property directly from the succession at the probate sale, she having possessed the legal right so to do. LSA-Civil Code Article 1146. Moreover, for several years prior to the purchase by Mrs. LeBlanc (who had offered to pay more than anyone else) the Bank had the property for sale on the open market and there were no takers.
Plaintiffs further argue that “ * * * the debts of the succession were so small in relationship to the status of the assets including the dairy business, as to make any kind of sale to pay debts untenable. Certainly the debt due the Federal Land Bank was in excellent shape. The other debts could have been paid in the regular course of business as was done in the case of the debt due the Bank of Jackson.” (The last mentioned debt, in the amount of $1,000, was discharged by Mrs. Dawson’s personal assumption of it and her giving *899 security.) By such argument plaintiffs seem to take the position that the executrix, instead of selling the assets, was obligated to continue operation of decedent’s dairy business, liquidating the succession debts out of the profits to be received. But in support of the proposition they cite no authority, and we know of none. Besides, continued operations might have resulted in losses, rather than desired profits.
Nor does the record substantiate the assertion that the debts were “so small in relationship to the status of the assets.” Among the several succession obligations was a paraphernal claim of Mrs. Dawson for $14,000 (only $407.03 of the proceeds from the probate sales was applied on it) which was evidenced by an affidavit of decedent, executed and recorded many years prior to his death and at an unsuspicious time. True, plaintiffs now question the validity of such claim; but it was included and listed in the final account of the executrix that was long ago approved and homologated, no opposition thereto having been offered by anyone.
As did the trial judge we conclude that plaintiffs’ attack on the mentioned succession sales cannot succeed. It is our opinion, however, that in the decree to be rendered there should be reserved to the children of the first marriage their rights in and to the above mentioned undivided realty interest acquired by the first community.
For the reasons assigned the judgment of the district court is amended by reserving to plaintiffs Mrs. Minnie Dawson Gonzales, Mrs. Mae Dawson Molbert and Mrs. Mattie Dawson Sibley whatever rights they have or might have to an undivided one-fourteenth interest in and to a tract of land containing 160 acres, more or less, located in the Parish of East Feliciana, and bounded north by W. S. Dawson, east by W. S. Dawson and Keller, south by Keller, and west by W. S. Dawson, acquired by purchase as per act in Book K-2, Folio 42, of the records of said parish. And the judgment, as amended, is affirmed at plaintiffs’ costs.