## W. W. Washburn *v.* John Green.

The purchaser at a judicial sale, acquires such a vested right to the property by the adjudication, that it cannot be taken from him unless he refuses to comply with the terms of the sale.

But if the purchaser refuses to comply with the terms, he is considered as never having been owner, saving to the vendor his right to compel a specific performance of the contract.

Where that refusal to comply is recognized by a final judgment, ordering the property to be re-sold at the risk of the purchaser, it is a complete divestiture of any right under the first adjudication, and this effect will be produced even if the purchaser be a mortgage or privilege creditor of the succession.

APPEAL from the District Court of the parish of Jefferson, *Burthe*, J.

*T. A. Bartlett,* for plaintiff and appellant. *Durant & Hornor,* for defendant.

Merrick, C. J. This suit is brought to recover one undivided half of two squares of ground Nos. 32 and 34 in Bloomingdale, in the parish of Jefferson.

Judgment was rendered in favor of the defendant, and plaintiff appeals.

A brief reference to the main facts of the case will best enable us to appreciate the questions propounded for us to solve on this appeal.

*Thomas J. Cushing,* who was the owner of the property in dispute, died in 1836, and *John P. Todd* was appointed curator of his succession in 1840. At this time the defendant, *Green,* appears to have had a mortgage and the vendor's privilege upon half of square No. 32 for $3710, and upon the other square for $4745.

*John P. Todd* was appointed curator of *Cushing's* estate as a vacant estate, and obtained an order for the sale of the property from the Probate Court in August of that year (1840), under the allegation that there were debts, and that *John M. Bach* held a mortgage upon the property, and that he required the same to be sold for cash. The half of square No. 32 was sold by *J. A. Beard,* Auctioneer, to *James Ogilvie* for $500, and the half of square No. 34 to the defendant, *Green,* for $700 cash; but the purchasers did not comply with the terms of sale.

In February, 1841, a rule was taken in the Probate Court by *Todd,* the curator, on *Green* and *Ogilvie,* to show cause why they should not comply with the terms of sale described in the *proces verbal* of the auctioneer, or why the property so adjudicated should not be again sold for account of and at the risk of said *Green* and *Ogilvie.* On the 14th day of June, the rule was made absolute, and it was ordered that the property described in the *proces verbal* should be re-sold at public auction on the same terms and conditions, for account and risk of the purchasers respectively. No re-sale was made. Twelve years afterwards, viz, in May, 1853, the State Treasurer took a rule against *Todd* to show cause why he should not sell the property. *Todd* answered, that the reason why he did not sell was, because the privileged and mortgage debt due on it to *Green* and *Ogilvie,* with interest, would have exceeded the amount which the said property could have produced, and therefore, he considered such a proceeding with the expense unnecessary. He prayed that *Green* and *Ogilvie* might be made parties to the proceeding, but this prayer does not appear to have been noticed. The rule was dismissed.

In May, 1854, *Isaac Cushing* was recognized by the Second District Court as the sole heir of *Thomas J. Cushing,* deceased, and on the 3d day of January, 1856, as sole heir, he sold the property in dispute to the plaintiff for $3000, *John P. Todd* acting as his mandatary under a power of attorney. The *proces verbal* of the auc-

tion sale was recorded in May, 1853, and in July, 1854, *James Ogilvie*, by a private writing, endorsed on a copy of the *proces verbal*, acknowledged that he bought the half square of ground adjudicated to him as the agent of *Green*, and declared *Green* to be the owner.

This suit was brought in 1856, and the defendant charges that the sale from *Isaac Cushing* to the plaintiff was fraudulent.

It is manifest from this statement of the case, that the first question to be considered is, in whom was the property vested after the judgment on the rule taken by the curator against *Green* and *Ogilvie?*

It could not be in abeyance. It was either in the succession or in the purchasers. The defendant contends that it was in the latter. The argument is, that the adjudication gave the purchasers a good title; that if they did not comply with the sale, the curator could either obtain a dissolution (C. C. 2539), or have the property sold at the risk of the purchaser; that in selecting the second remedy, the curator obtained a judgment ordering the property to be sold for account and risk of said purchasers, and he neglected to enforce and execute said judgment, and therefore, the defendant has never been divested of his rights.

This argument, although it acquires some force from certain authorities, does not appear to us tenable. It is true that Article 2586, C. C., declares that the adjudication is the completion of the sale. But it was never the intention of the lawgiver to say that this consequence should follow, and the sale should be complete where the purchaser had refused to comply with the terms of the sale on demand, and had been decreed by the judgment of a competent tribunal to be in default. Otherwise this would happen; the *title* would *vest* in the *vendee* and would become subject to all legal and judicial mortgages operating upon his property, and the re-sale would transfer the title of such vendee so encumbered direct to the new purchaser who would not acquire from the succession; which would be absurd.

The purchaser at a judicial sale acquires such a vested right to the property by the adjudication, that it cannot be divested and taken from him unless he refuses to comply with the terms of the sale. It is in his power by a compliance with the terms of sale, to become the owner by indefeasible title. It cannot be taken from him. In this sense, the adjudication is the completion of the sale. But if the purchaser refuses to comply with the terms of sale, he is considered as never having been owner, saving to the vendor his right to compel a specific performance of the contract.

In the case before us, the refusal to comply is recognized by a final judgment, and the property is ordered to be sold at the risk of the purchaser. This was a complete divestiture of any right which the purchasers had acquired by their bids. The curator at once became re-invested with the possession of the property, and could enter upon the same, and at a re-sale could put any subsequent purchaser in possession.

That the title to the property by the act of adjudication does not pass where there is a refusal to comply with the terms of the sale, clearly results from the following decisions, viz: *Municipality No. 2* v. *Hennen*, 14 La. 588, 590; *Mercier* v. *Sterlin*, 5 La. 472; *Banks* v. *Hyde*, 15 La. 398; *Rowley* v. *Kemp*, 2 An. 361.

If the curator had a right to proceed to a re-sale at public auction, the unconditional heir would, as a consequence, have a right to sell in the same manner or at private sale, if that suited him better.

The effect of the rule taken by the State and the answer by the curator remains to be considered. The curator could not, by his mere admission in an answer, change the legal rights of the parties, and the dismissal of the rule between the Treasurer and the curator was but a conclusion of the court, that it was not the interest of the State to compel a re-sale of the property, as it would add nothing to the treasury. It does not benefit the defendant's case.

As *Isaac Cushing* might himself have sued for and recovered the property, it is idle to inquire what motives induced him to sell to the plaintiff. It may be that the recovery in this case will work a hardship upon the defendant. If it does, he can only attribute it to his refusal to comply with the terms of sale, and suffering a judgment to be rendered against him which he allowed to become the thing adjudged. If he was a mortgage or privilege creditor of the succession, it was not less his duty, if he chose to preserve his rights, to see that property on which he set up his claim was sold, and the proceeds distributed, or, as the original vendor, to have provoked a rescission of the sale for the non-payment of the price.

It is, therefore, ordered, adjudged and decreed by the court, that the judgment of the lower court be avoided and reversed; and we do now here order, adjudge and decree, that plaintiff, *William W. Washburn*, do recover and have judgment against the defendant, *John Green*, for the following real property situated in Bloomingdale, in the parish of Jefferson, in said State, viz : the one undivided half of a square of ground designated by the number thirty-two, containing 14 lots, numbered from 1 to 14 inclusive, and which said square measures 205 feet 11½ inches front on William street, 300 feet on State street, 200 feet 11½ inches on Benjamin street, and 300 feet on the division line of property formerly owned by *Cornelius Hurst*, and the one undivided half of another square of ground designated by the number thirty-four, in the same village, containing 13 lots, numbered from 1 to 13 inclusive ; said last mentioned square measuring 204 feet 9 inches 5½ lines front on Nayades street, 291 feet 3 inches front on State street, 200 feet 3 inches 1½ lines front on Benjamin street, and 368 feet on the division line of property now or formerly owned by *D. F. Burthe*. And it is further ordered, that a writ of possession issue, and that the defendant pay the costs of both courts.

SPOFFORD, J., took no part in this case.