| 15 | 342 |
| 46 | 985 |

## HENRY J. RANNEY *v.* LEONCE BURTHE et al.

The mortgage and privilege given by the Act of 1835, entitled " An Act to provide for the draining and clearing of the marshy grounds and cypress swamps situated between the city of New Orleans, its incorporated suburbs, and Lake Ponchartrain," does not create a mortgage or privilege with a potestative condition on the part of the property holders ; the potestative condition was in favor of the Draining Company, and the Act of the Legislature by its terms declares, that " such privilege and first mortgage " shall take precedence over all other mortgages whatsoever, and *shall attach to the property.*

Where a party purchased certain lots of ground, in 1847 and 1850, situated within the Second Draining Section, and, after the drainage had been completed, the tax assessed, the tableau confirmed by a final judgment, and an order of seizure and sale issued upon the mortgage and privilege given by the Act of 1835 against the property, he paid the tax and brought suit against his vendor to recover the amount—*Held :* That, in the absence of a special warranty against the mortgage and privilege of the Draining Company, the action cannot be maintained.

APPEAL from the Fifth District Court of New Orleans, *Eggleston*, J.

*Geo. L. Bright*, for plaintiff. *Janin & Griffon*, for defendants and appellants.

MERRICK, C. J. The facts of this case are correctly stated in appellant's brief, from which we copy with some slight variations.

" This case originates out of the claims of the present proprietor of real estate situated within the Second Draining section, to recover from his vendor the amount of the Draining Tax assessed upon his property and paid by him to the New Orleans Draining Company.

" The vendor of plaintiff, to whose rights of warranty the latter is subrogated, acquired from *D. F. Burthe*, the defendant's ancestor, on the 28th of May, 1847, a certain number of lots within the Second Draining Section, upon which a tax of $655 52 was afterwards assessed ; and on the 13th of May, 1850, the plaintiff

acquired of *D. F. Burthe* and the estate of *Hiligsberg* certain other lots, upon which a tax of $118 56 was afterwards assessed, making in all the sum of $774 08, the amount due on plaintiff's property as fixed by the final judgment of this court in the case of the New Orleans Draining Company, praying for the confirmation of a tableau, &c., and reported in 11 An. 338. For this amount, with ten per cent. interest from 20th January, 1851, an order of seizure and sale of property was obtained by the Receiver of the Draining Company from the Third District Court, in September, 1856. The plaintiff thereupon paid the amount of the assessment, and now seeks to recover it of the defendant."

The Act authorizing the draining of the lots in question, was approved March 19th, 1835. See 11 An. 342.

Under this Act, a judgment was rendered in 1845, decreeing them subject to a first mortgage and privilege, to take precedence over all others in favor of said Draining Company.

The judgment of the lower court was in favor of the plaintiff in this case, and defendants appeal.

The appellants rely upon three grounds for a reversal of the judgment, viz :

1. That the mortgage was prescribed, and as defendant did not call in his warrantors to protect him, he has no recourse against them.

2. That at the date of the sale to plaintiff's vendor, *Hoey*, 28th of May, 1847, the Draining Company had no claim on the property sold, such as would be included in the general warranty given both by the act of sale and by the law, to the vendee; that the right of the Draining Company did not exist before the sale.

3. That *Hoey* was a purchaser with notice, as the Acts of the Legislature are presumed to be known by every one.

4. That the judgment is *in solido* and *Burthe's* heirs are made to pay the tax due by *Hiligsberg's* estate.

It is not necessary to consider these questions in their order.

The mortgage and privilege given by the Act of 1835, does not appear to us to create a mortgage or privilege with a potestative condition on the part of the property holders, the debtors, in which event alone the mortgage would date from the happening of the condition.

The potestative condition was in favor of the creditor, the Draining Company, and the Act of the Legislature by its terms declares that " said privilege and first mortgage " shall take precedence over all other mortgages whatsoever and *shall attach to the property*.

This law was in force at the time when *Hoey* and the plaintiff acquired from defendant's ancestor, and they are presumed to have known the law.

It is also well known, that it is only the *completion* of the works for the draining of property which adds the main value to the same. The ditches and the works are comparatively valueless until they are connected and made available by the proper machinery and steam power. 11 An. 375.

Hence, the Act of the Legislature provides that the account against the property holders is to be made out so soon as the draining of said section is completed, and not before.

When, therefore, *Hoey* and the plaintiff bought, they were bound to know that a contract had been entered into between the State and the Draining Company, by which the latter had contracted to drain, and thus improve, the property in question, at the expense of the property holders.

We have just seen that the mortgage and privilege in favor of the company *attached to the property.* Now, *Hoey* and the plaintiff (who was the engineer who conducted the works,) bought the lots with the knowledge of a contract in favor of the property, by which it was to be improved at the charge of the lots, or in other words, at the charge of the owners, at the completion of the works for draining the same.

Equity, therefore, requires that the party who has been benefited by the work should pay for its cost. *Qui sentit commodum, sentire debet et onus.*

The case may be illustrated by an example. *A,* the owner of building lots worth $10,000, has stipulated with a contractor, that the latter shall build a dwelling house and out buildings upon the property, at a cost of $15,000, and he mortgaged the lots to the contractor as a further security. After the contractor has bought the materials, but before the work has been actually commenced, *A* sells the lots to *B* for $10,000, and transfers the property with his contract for building the house. After the work is completed, the contractor compels *B* to pay by foreclosing the mortgage. *B* will call upon *A* in vain to indemnify him, although the mortgage rested upon the property at the time of the sale, because *B* was aware of the mortgage when he bought, and he knew that the house was to be built for his advantage and benefit. C. C. 2477, 2535.

Take another case. In 1845, *A* owned a square, which was almost a marsh, in the district to be drained. Immediately after the decree, in 1845, condemning the district to be drained, he sold the square to *B* for a small sum. The property is drained in *B's* hands, and has become valuable and fit for buildings and habitations. With what justice can *B* claim a reimbursement for an amount which has been expended for the purpose of enhancing the value of his own property? Yet the principle which would enable the plaintiff to recover, would sustain *B's* action also.

In the absence of a special warranty against the mortgage and privilege of the Draining Company, and in view of the fact that it was the completion of the work which produced whatever there was of substantial benefit to property of plaintiff, we conclude that the action cannot be maintained.

The question is not a new one. In the case of *Municipality No. One* v. *Leroy,* 15 La. 147, it was considered to be quite clear, that the vendee would have no claim on the vendor for the amount he would be obliged to pay the company for the enhanced value of the property—the result of the work. See also the case of the same plaintiff against *Cordeviolle,* 19 La. 235.

It is, therefore, ordered, adjudged and decreed by the court, that the judgment of the lower court be avoided and reversed ; and it is now ordered, adjudged and decreed, that there be judgment in favor of the defendants, and against the demand of the plaintiff, and that the plaintiff pay the costs of both courts.

BUCHANAN, J., took no part in this decision.

LAND, J., absent.