MONROE, J.
The Etta Contracting Company obtained judgment in the district court against Charles Bruning, as the owner of a certain lot on Dryades street, for his proportion of the cost of certain paving done on that street under a city ordinance, and, Bruning having called Mrs. McBurney, his vendor, in warranty, and having obtained a like judgment against her, and both judgments having been affirmed by the Court of Appeal, Mrs. McBurney has caused the ruling so made to be brought into this court for review.
[I] In the answer filed by him Bruning alleges that he bought the lot from Mrs. MeBurney with full warranty, by notarial act of date March 6, 1909. It was, however, admitted on the trial, that the lot was adjudicated to him at public auction, on January 28, 1909, the procés verbal of the auctioneer reading, in part, as follows:
“Terms: One-third, or more, cash, balance in 1 & 2 years, bearing 7 per cent, per annum interest, and all usual security clauses, and the assumption by the purchaser of the taxes due and exigible in 1909, over and above the price of adjudication, and to be entitled to the rents only from the date" of the passing of the acts of sale. Acts of sale before Frank W. Hart, N. P., at expense of the purchaser.”
It was also admitted that, on March 6, 1909, Mrs. McBurney (for whose account the adjudication had been made) executed an act of sale of the property, to the adjudicatee, before Hart, notary, which act contained the usual warranty, and also contained the declaration that it was executed—
“in confirmation of a public adjudication, made by Leonard L. Stern, auctioneer of this city, on January 28, 1909, as per proees verbal of said auctioneer annexed hereto (to said act).”
It was further admitted that, in addition to the procés verbal, there was attached to the act a certificate showing that there were, at that time, no mortgages or liens of record against the property, in the names of the vendor or her authors in title; that, on February 5, 1909, the Etta Contracting Company had entered into a contract with the city of New Orleans for the paving of Dryades street from Tulane avenue to Gravier street, and had executed the contract; that the paving was laid in front of the lot acquired by Briming, as stated, and that, on October 29, 1909, after the paving had been completed, the city engineer issued his certificate, showing the proportionate amount of the cost of the paving which was chargeable to said lot; that the certificate was recorded within 60 *51 days from the date of its issuance; and that, in accordance with the terms of the procñs verbal of adjudication, Mrs. McBurney collected and retained the rents from the property up to the date of the passage of the notarial act.
“The adjudication [says the law] is the completion of the sale; the purchaser becomes the owner of the article adjudged, and the contract is, from that time, subjected to the same rules which govern the ordinary contract of sale.” Giv. Code, art. 2608.
The article thus quoted is found under the title “Of Sales by Auction, or Public Sales,” and article 2603, under the same title, reads:
“The sale by auction, as it is made by officers of justice, is treated separately, under the chapter on judicial sales”—
which leaves no doubt as to the proper application of article 2608 to nonju’dicial public sales. Construing and applying the law thus quoted, this court has said, in a comparatively recent case, that:
“Nothing is better settled than that the adjudication is of itself, and before anything else is done, the completion of the sale; and that either party has a right of action to compel the other to carry out the contract.” Landry v. Laplos, 113 La. 699, 37 South. 606 (citing Municipality v. Cordeviolle, 19 La. 235; Succession af Goodrich, 6 Rob. 107; Bank v. Hodge, 8 Rob. 450; McCarty v. Gasquet, 11 Rob. 270; Washburn v. Green, 13 La. Ann. 332; Nesom’s Heirs v. Weis, 34 La. Ann. 1004; Lane v. Cameron, 36 La. Ann. 773; Succession of Massey, 46 La. Ann. 126, 15 South. 6; McCall v. Irion, 41 La. Ann. 1126, 6 South. 845; Interdiction of Onorato, 46 La. Ann. 73, 14 South. 299).
Of course, if the party for whose account the property is adjudicated has no title, the adjudicatee acquires none; and, if the title tendered, and which the adjudicatee is thought to have acquired, is suggestive of litigation, or the property-is incumbered, when he has been led to believe it unincumbered, he cannot be compelled to comply with the terms of the adjudication; and, again, in sales by auction, if the adjudicatee does not comply with the terms of the adjudication, to the extent that compliance is required, at the time, the property may be resold, at his risk and expense, all of which contingencies are provided for by the article of the Code which we have quoted, when it declares that “the contract is from that time [i. e., from the time of the adjudication] subjected to the same rules which govern the ordinary contract of sale,” by article 2609, which provides that, if the adjudication is made for cash, the auctioneer may require the price immediately, before delivering the property, by article 2610, which provides that, if the object adjudged is an immovable, the purchaser may retain the price and the seller the possession of the thing, until the act of sale shall have been passed, which should be within 24 hours, and by articles 2611 et seq.,. which declare under what circumstances property which has been adjudicated may be resold, at the risk and expense of the adjudicatee. Among the rules which govern the ordinary contract of sale will be found the following (article 2480): That the seller may reserve to himself the usufruct, or may retain possession of the property, though, as to third persons, the parties in such cases may be compelled to prove their good faith; that the buyer should pay the price on the day and at the place mentioned in the contract, otherwise the seller may sue for the dissolution of the sale, though, where the thing sold is an immovable, the judge may grant an extension of time; that, where the thing sold is a certain and limited body (of land), the seller cannot demand any supplement of price by reason of overplus in measure, nor can the buyer demand any diminution of price by reason of deficiency in measure, unless such deficiency amounts to one-twentieth of that expressed in the contract; that, where the object is designated by adjoining tenements, there can be neither increase nor diminution of price on account of disagreement as to measurement. There is *53 a line of cases whereby it may be regarded as settled (certainly, with regard to judicial sales) that, where the purchaser refuses to comply with the terms of the adjudication, he is considered as never having been the owner. Thus, in Washburn v. Green, 13 La. Ann. 332, in answer to the argument that the adjudication gave the purchaser a good title, and that the vendor, on the failure of the vendee to comply with its terms, could have obtained the dissolution of the sale, or have had the property resold, the court said:
“This argument, although it acquires some force from certain authorities, does not appear to us tenable. It is true that article 2586, O. C. [now 2608] declares that the adjudication is the completion of the sale, but it was never the intention of the lawgiver to say that this consequence should follow, and the sale should be complete, where the purchaser had refused to comply with the terms of the sale on demand, and had been decreed by the judgment of a competent tribunal to 'be in default. Otherwise this would happen: The title would vest in the vendee, and would become subject to all legal and judicial mortgages operating upon his property, and the resale would transfer the title of such vendee so incumbered direct to the new purchaser, who would not acquire from the succession [or party for whose account the adjudication was made], which would be absurd. The purchaser at a judicial sale acquires such vested right to the property, by the adjudication, that it cannot be divested and taken from him unless he refuses to comply with the terms of sale. It is in his power, by a compliance with the terms of sale, to become the owner by an indefeasible title. It cannot be taken from him. In this sense, the adjudication is the completion of the sale.- But if the purchaser refuses to comply with the terms of sale, he is considered as never having been owner, saying to the vendor the right to compel a specific performance of the contract.”
It will be observed that, whilst the court was dealing with a question arising from a judicial sale, it construed, as applicable to it, article 25S6 of the Civil Code (now 2608) which is found under the title relating to “Sales by Auction, or Public Sales,” and which is made applicable to judicial sales by virtue of article 26T7 (under the title “Of Judicial Sales”), which declares that judicial sales are subject to the rules laid down for public sales, in general, save as otherwise expressly provided. It is plain, therefore," that the reasoning of the court, in the case thus cited, applies with as much force to nonjudicial, as to judicial, public sales.
We are not here dealing, however, with the case of an adjudicatee who has refused to comply with his bid, but with the case of an adjudicatee who, more than a month after the adjudication, voluntarily made himself a party to a notarial act which declares, in terms, that it was executed in confirmation of the adjudication, who then and there paid the price for which it had been adjudicated and went into possession of the property, and who did not take the position which he now assumes (i. e., that he acquired no title by the adjudication), until after the lapse of more than three years, when, answering the demand of the plaintiff in this case, made against him as owner of the property here in question, he alleged that he bought the property, by notarial act of March 6, 1909, with all legal warranties, from Mrs. Mc-Burney; that the claim sued on is in the enforcement of a paving lien arising under a contract between plaintiff and the city of New Orleans, of date February 5, 1909; that said claim, if otherwise valid, was a burden resting on the property when he bought it, and that, if he should be held liable therefor, to plaintiff, Mrs. McBurney, as his warrantor, should be held similarly liable to him. Applying the law, to which we have referred, to the adjudication of which the notarial act, accepted by defendant, was the confirmation, we are clearly of opinion that defendant’s title originated in the adjudication and not in the notarial act. The learned Court of Appeal, resting its decision entirely upon the decision of this court in the case of Collins v. Desmaret, 45 La. Ann. 114, 12 South. 121, held that:
“An adjudication made at public auction, by direction of the owner, and not under an order of court, amounts only to a promise of sale, *55 and not to a completed sale, vesting title in the purchaser.”
The decision referred to, no doubt, bears that interpretation; but the fact is • (as shown by the opinion of the court), there was no adjudication in that case; the circumstances being: That the property was offered at auction, but was withdrawn; that the auctioneer thereafter received a written offer for it, from defendant, and that, in formally accepting it, he requested that defendant “make the usual 10 per cent, cash deposit,” which the defendant did; that the owner of- the property (Collins) thereafter sued for the whole amount offered, upon the theory that the amount deposited was a payment on account of the price, whereas, the contention, on the other side, appears to have been that the auctioneer was the agent of the owner for the purposes of a sale at auction, but not for the purposes of a private sale, and, in any event, that the amount deposited was merely “earnest money,” and not a payment on account of the price. The court concluded (quoting the syllabus of the opinion, which seems correctly to summarize the views therein expressed) as follows, to wit:
"1. One proposing to purchase at a stated price property advertised for sale at auction, if made to the real estate agents advertising the sale, and upon the date of such auction sale, must be viewed in the light of a purchaser at auction, and not as the vendee in a conventional contract of sale.
“2. The paying of a certain stipulated cash deposit, at time of adjudication at an auction sale, is not to be construed as a payment of part of the purchase price, as such, but as the giving of an earnest to bind the bargain during the time titles are being prepared.
“3. Such a proposition, though formally accepted, does not constitute a perfect and completed sale, but a promise of sale only, that entitles the parties, respectively, to sue for specific performance or the payment of damages.”
The law (O. O. art. 2615) declares that: “The adjudication can only be made to a bidder present, or properly represented,” etc.; and it also makes specific provision with regard to the manner in which property shall be offered and adjudicated at auction. Thus:
“This officer [the auctioneer] after having received in writing, from the seller, the conditions of the sale, must proclaim them, in a loud and audible voice, and afterwards propose that a bid shall be made for the property thus offered;” and, “when the highest price offered has been cried long enough to make it probable that no higher will Joe offered, he who-has made the offer is publicly declared to be-the purchaser, and the thing sold is adjudicated to him.” O. O. arts. 2606, 2607.
As the course thus prescribed was not pursued in the transaction between the defendant, Desmaret, and the auctioneer, it is evident that there was no sale, or adjudication,, at auction, which left the question whether the transaction amounted to a completed sale to be governed by some other rules than those which apply to such adjudications. The court, however, held that the rules governing sales at auction should be applied to-the extent that the auctioneer should be considered as acting in his official capacity, and under the authority conferred on him in that capacity, in receiving the written offer for the property (though he was not then offering the property for sale at auction), but that the rules governing private sales should be applied to his action in accepting the offer so made to him, and hence that the acceptance did not amount to an adjudication of the property, which completed the sale- and vested the title in the person making the offer. The judgment, in sustaining an exception of no cause of action, appears to us-to have been authorized, but we are of opinion that there was error in assigning, as a reason therefor, that the defendant in the case was, under the circumstances disclosed by the petition, to be viewed in the light of a purchaser at auction, and not as a vendee, or-proposed 'vendee, in a conventional contract of sale, or promise to sell. It may be noted, in this connection, that by Act 316 of *57 1908, the General Assembly has declared, with reference to judicial sales, in parishes containing 200,000 or more inhabitants, that a payment on account—
“shall not be considered as earnest money and shall not give the purchaser the right to withdraw from the sale by forfeiting the deposit,” etc.
Our conclusion upon the point under consideration, then, is that the law and jurisprudence of the state establish the general rule (to which there are certain exceptions) that the adjudication at public auction completes the sale and vests in the adjudicatee the ownership of the property adjudicated, and that, where such adjudicatee subsequently participates, as vendee, in the execution of a notarial act, which in terms declares that it is executed in confirmation of the adjudication, he has no standing thereafter to deny the application of the rule to his case, and to assert that his title was derived from the notarial act and not from the adjudication. We may add, however, that we have considered the circumstances to which counsel for defendant refer, in support of their contention that the adjudication, in this case, did not complete the sale, and that they appear to us to be incidents which are quite common in such cases, and which would, in no manner, affect the conclusion thus reached, even if we were of opinion that they should be permitted to enter into the case.
[2] The remaining question arises from the fact that, on January 5, 1909 (several weeks, as will be observed, before the adjudication here in questipn), the city council passed an ordinance accepting the bid of the Etta Contracting Company, and authorizing the mayor to enter into the contract for the paving out of which this litigation has arisen, and the contention on behalf of the plaintiff is that it must be presumed that the notice required by law was given of the intention to enter into the contract, and that Mrs. McBurney, as one of the parties interested, received it, and hence knew that the contract “would be signed at any time, and that the cost of paving operated as a lien on the property.” The cost of paving does not, however, operate as a lien upon the property merely by reason of the fact that the paving is in contemplation, and may be done at some time in the future. There can be no debt, and hence no lien, for paving until the contract for the paving has been executed and the certificates issued therefor have been recorded. Apart from the general policy of the law that no incumbrances shall affect the title to real estate which is not placed on record, and which includes even the claim of the sovereign for its taxes, the special statute, under the authority of which the paving here in question was. done, expresses with reasonable certainty, as it appears to us, the idea that the charge imposed for paving, in any particular case, becomes and operates as a lien upon the property subject to such charge when, and only when, the paving is completed and the official certificate therefor is issued and recorded. Section 98 of Act 59 of 1908 (being the special statute mentioned) reads in part:
“In all cases the property portion of the cost of roadway or roadways’ repaving or rebanqueting shall constitute a first privilege, superi- or to vendor’s lien, or any other privilege, or mortgage, and shall be due by such property until paid though the same be transferred or conveyed by sale for taxes or otherwise; it shall be sufficient evidence of such indebtedness to record the roadway or roadways’ repaving or rebanqueting certificates, herein, before described, in the office of the recorder of mortgages for the parish of Orleans, within sixty days from the date of their issuance by the city engineer and commissioner of public works.”
The paragraph, quoted, in a single sentence, all of the parts of which are to be construed together, declares: First, that the property portion of the cost of the repaving shall constitute a privilege on the property; and, second (since a privilege can exist only to secure a debt, and, in order to establish the existence of a debt, there must be evi *59 dence of consideration), that the recording of the official certificates in the office of the recorder of mortgages shall be “sufficient evidence of such indebtedness,” which is equivalent to saying that nothing more than the recording of the certificates shall be required, and that, in turn, contains a negative, pregnant with the affirmative, declaration that nothing less than such recording will answer the purpose of proving the debt and establishing the privilege; otherwise, and if both the debt and the privilege come into existence with the ordinance authorizing the contract for the paving, and the bare ordinance is sufficient evidence of both, the declaration of the law that the recording of the certificates in the office of the recorder of mortgages, “within 60 days from the date of their issuance,” is mere surplusage.
The general policy of the law, however, has always been to require all claims, of whatsoever kind, purporting to affect or incumber immovable property, to be spread upon the public records, so that any one having an interest may know where to find them; and it would require much stronger language than any that we have been able to find in the paving laws to convince us that the General Assembly of 1908, or of any previous year in the history of the state, ever conceived the idea of establishing a tacit privilege to secure the cost of paving. The jurisprudence to the effect that claims arising under various statutes, for taxes and local assessments, enjoy no privilege unless and until recorded is well settled. City Bank v. Huie, 1 Rob. 236; Bank v. Richardson, 12 Rob. 596; Succession of Edwards, 32 La. Ann. 457; Marmillon v. Archinard, 24 La. Ann. 610; Savings Institution v. Leslie, 28 La. Ann. 496; Cochran v. Ocean Dry Dock Co., 30 La. Ann. 1365; Jacob v. Preston, 31 La. Ann. 514; Moody & Co., Ltd., v. Sewerage & W. Board, 117 La. 367, 41 South. 649; Town of Rayne v. Harrel, 119 La. 657, 44 South. 330. Considering the matter from an equitable point of view, it would seem that the particular owner who enjoys the benefit of the public improvement, whatever it may be, should pay for it, rather than his author in title, who had parted with his interest in the property affected before the improvement was begun, and that is the view that this court, and others, have taken.
The case of Municipality v. Leroy, 15 La. 147, was a suit upon a note given for the purchase price of property, sold with warranty, in which the defense set up was that the purchaser, after buying the property, had discovered that it was within a drainage district, all the land in which was subjected to a mortgage to secure the cost of its drainage, which was thereafter to be done, and that the defendant, who was sued for the price feared eviction. The court said:
“We can hardly believe that this defense is a serious one. * * * What is the disturbance which the defendant avers that he has just cause to fear? It is one which can only take place through his own fault or neglect, and for which no warranty is due him by his vendor. If his land is drained, and, after receiving the benefit of this improvement, tl)e defendant refuses to pay to the company the proportion of the enhanced value for which the law grants them a mortgage,, he might truly be troubled and disquieted, but then it would not be^ on account of a pre-existing claim due by plaintiffs, for they never promised or engaged to pay for the draining of the property sold to defendant. * * * The law creating the draining company, and granting them a mortgage on all property they should drain and improve, had been in force more than two years when this sale was made; it is even very probable that the fact of the operations of the company being about to be carried into that section, and the prospect of the consequent enhancement of the value of property in that neighborhood, induced the plaintiff to make the purchase now sought to be annulled on that account.”
In a similar suit, by the same plaintiff, where a similar defense was set up, with other defenses (Municipality v. Cordeviollc, supra) Martin, J., as the organ of the court, said:
“The operations of the draining company, authorized by the act of the Legislature, were *61 known by the defendants and the public; and most probably the expectation of the advantages which those operations seemed to promise were the inducements which led the plaintiffs to improve the favorable moment to sell and the defendants and others to bid.”
In Ranney v. Burthe, 15 La. Ann. 343, it appeared that plaintiff brought property, in the Second Drainage District, which was subject to mortgage to secure a prospective charge for draining, to be thereafter effected and that, the drainage having been effected, he paid the charge and sued his vendor to recover the amount so paid, under a general warranty in his title. This court, through Merrick, C. J., said:
“It is well known, also, that it- is only the completion of the work for the drainage of property which adds the main value to the same. * * Hence the act of the Legislature provides that the account against the property holders is to be made out so soon as the draining of said section is completed, and not before. * * * Equity, therefore, requires that the party who has been benefited by the work should pay for its cost. Qui sentit commodum, sentiré debet et onus. * * * In the absence of a special warranty against the mortgage and privilege of the draining company, and in view of the fact that it was the completion of the work which produced whatever there was a substantial benefit to property of plaintiff, we conclude that the action cannot be maintained [and the two cases to which we have referred were cited as precedents].”
The same view has been held in other jurisdictions, as appears from the following cases, to which we have been referred by counsel for the applicant now before the court, to wit:
Carey v. Gundlefinger, 12 Ind. App. 645, 40 N. E. 1112, where it was said:
“Where a vendor agrees to convey land at a future time, with covenants of warranty, and, in pursuance of the terms of the agreement places the purchaser in possession, assessments for street and sewer improvements, made after the execution of the contract, but before the execution of the deed, are not incumbrances within the meaning of the contract”
—since such assessments are not an injury to the land, which, in contemplation of the statute authorizing the assessments, is benefited by the improvements “to the amount of the assessments.”
Mullen v. Clifford, 37 Ind. App. 435, 76 N. E. 1009; Langsdale v. Nicklaus, 38 Ind. 289; Cemansky v. Fitch, 121 Iowa, 186, 96 N. W. 754; De Peyster v. Murphy, 39 N. Y. Super. Ct. 255; Dowdney v. City of New York, 54 N. Y. 186; Harper v. Dowdney, 113 N. Y. 644, 21 N. E. 63; Wolff v. Baltimore, 49 Md. 446.
In our opinion, therefore, Act 59 of 1908, in providing that “in all eases the property portion of the cost of roadway and roadways’ repaving or rebanqueting shall constitute a first privilege,” etc., and that “it shall be sufficient evidence of such indebtedness to record the * * * certificates,” etc., contemplates the completion of the work, and the assessment of the cost thereby imposed upon the respective properties affected by it, and also contemplates the recording in the mortgage office of the official certificates, showing those facts, as the evidence of the indebtedness constituting the basis of the privilege accorded by the act, and as establishing said privilege. Hence no privilege for paving exists merely by reason of the passage of an ordinance authorizing a contract therefor. Hence, also, the owner who sells his property after the passage of such ordinance, and before the recording of the certificate, is not legally liable, under a general warranty, to his vendee, with respect to a paving privilege which may, thereafter, be brought into existence; nor is he bound therefor in equity, since the vendee in such case, and not the vendor, becomes the beneficiary of the improvement, and is presumably compensated for the cost by the resulting advantage.
It is therefore adjudged and decreed that the judgments of the District Court and Court of Appeal, here made the subject of review, be set aside and annulled, in so far as they condemn Mrs. A. S. McBurney, called *63 in warranty; that the demands contained in said call be rejected, and the call dismissed; and that Charles Bruning, defendant in the ■case, pay ail costs incurred by said Mrs. McBurney by reason thereof.