Mrs. Viola Moran Richard, administratrix of the succession of Katie McCausland Buras, in order to pay debts of the succession, obtained an order for the sale of two pieces of immovable property of the succession described as follows:
"A certain lot of ground, together with all the buildings and improvements, servitudes and appurtenances thereto belonging, or in any wise appertaining, situated in the Third District of this City, in the Square No. 151, bounded by Mandeville, Chartres, Marigny and Royal Streets, designated as *Page 509 
Lot `B' on a blue print of survey made by H.L. Zander, Engineer Surveyor, dated October 30, 1905. Which lot commences at a distance of fifty feet, four lines from Royal Street and measures thirty-five feet, three inches front on Mandeville Street, by sixty-four feet in depth between parallel lines.
"A certain lot of ground, together with all the buildings and improvements thereon, rights, ways, privileges, servitudes and advantages thereunto belonging or in any wise appertaining, situated in the Third District of this City, in Square No. 151, bounded by Royal, Marigny, Mandeville and Chartres Streets; said lot measures in American Measure, twenty feet front on Royal Street by eighty-five feet in depth; and is bounded on the side next to Marigny Street by property formerly belonging to Pierre Mallay; and on side nearest to Mandeville Street by property formerly belonging to Paul Avril.
"And also a portion of ground and improvements, rights, ways, privileges, servitudes and advantages thereunto belonging or in any wise appertaining, in the same district and square as above property, in the rear of above lot, taken from a lot of ground fronting on Mandeville Street, and measuring as per sketch annexed to an act of sale before William Ardiel, Notary in this city, July 12th, 1898, seven and one-half feet on the rear line of said lot fronting on Mandeville Street, starting from the side line nearest to Royal Street, by five feet deep on parallel lines running from the rear of said lot parallel to said side line nearest Royal St., by seven and one-half feet wide in the rear."
The petition asked that the sale be made on the following terms: "On terms of cash, purchaser to deposit 10% of the purchase price at moment of adjudication, which deposit is to be non-interest bearing; act of sale to be passed before A.P. Schiro, III, Notary Public, within thirty days from adjudication at purchaser's expense; * * *".
In due course, the District Judge ordered that the sale, on the terms set forth, be made by I.B. Rennyson, auctioneer. After legal advertisements, the sale was made at public auction and the properties were adjudicated to Dreaux A. Solis, the property first described for $727 cash, and the other property for $1,102.50 cash. The adjudicatee deposited 10% of the purchase price of each. Thereafter, by registered mail, the said purchaser was called upon to appear at the office of the Notary Public named on March 7, 1942, which was the last day of the thirty days set forth in the terms of sale, and to accept title to the properties and pay the balance of the purchase price.
The purchaser did not appear and thereafter, on March 17, 1943, a registered letter was again sent to the purchaser advising that he had failed to take title in accordance with his obligation, and notifying him that the act of sale was prepared and that the property would be tendered him in the office of the Notary Public on March 20, 1942, at 2 p.m. At that time and place all necessary persons except the purchaser were present.
Thereafter the administratrix petitioned the court for authority to resell the property a la folle enchere under the provisions of Article 2611 of the Civil Code. On this petition an order was granted calling upon the said Solis to show cause why the property should not be so resold. To this rule the said Solis filed exceptions of no cause of action and no right of action. These exceptions were overruled; the rule was made absolute and the property ordered resold.
Solis has appealed.
The exceptions are based upon the theory that Article 2611 of the Civil Code, which authorizes a sale a la folle enchere, has no application here.
It is contended that because of Article 2610, right to resell a la folle enchere exists only where the law requires that the original sale must have been by notarial act, and that since Article 2623 provides that where there is a judicial sale of succession property there need be no notarial act, there may not be a resale a la folle enchere where the property involved forms part of a succession. Another theory of the exceptor is that the right to resell property exists only where the original sale was made for cash and that here the sale was made, not for cash but on a cash deposit of 10%, with thirty days additional granted for the payment of the balance and for the passage of the notarial act.
Article 2611, which authorizes the sale a la folle enchere, reads as follows: "Purchaser failing to comply with bid — Resale— Liability of first purchaser. — In all cases of sale by auction, whether of movables or immovables, if the person to whom *Page 510 
adjudication is made, does not pay the price at the time required, agreeably to the two preceding articles, the seller at the end of ten days, and after the customary notices, may again expose to public sale the thing sold, as if the first adjudication had never been made; and if at the second crying, the thing is adjudged for a smaller price than that which had been offered by the person to whom the first adjudication was made, the latter remains a debtor to the vendor, for the deficiency and for all the expenses incurred subsequent to the first sale. But if a higher price is offered for the thing than that for which it was first adjudged, the first purchaser has no claim for the excess."
This article follows Arts. 2609 and 2610, which read as follows:
"Art. 2609. Cash sales. — If the adjudication be made on condition that the price shall be paid in cash, the auctioneer may require the price immediately, before delivering possession of the thing sold.
"Art. 2610. Immovables sold — Act of sale. — If the object adjudged is an immovable for which the law requires that the act of sale shall be passed in writing, the purchaser may retain the price, and the seller the possession of the thing, until the act be passed.
"This act ought to be passed within twenty-four hours after the adjudication, if one of the parties require it; he who occasions a further delay is responsible to the other in damages."
We confess that we have had difficulty in following the argument of counsel. He contends that here there has been a complete adjudication to the purchaser and that title has actually passed by that adjudication, and that therefore there can be no resale. In his brief, he says:
"Article 2609 limits the application of the process generally to conditional adjudications, that is, to cash adjudications, that is, adjudications which are dependent upon the payment of the price as a condition precedent to the adjudication, so that if the price is not paid, there has been no adjudication, and if there has been no adjudication there has been no sale, and, if no sale, no transfer of title.
"Article 2608 provides that where there has been an adjudication there is a sale and transfer of title. There is no conflict between Articles 2608 and 2609. One provides for a completed, and the other for an incomplete adjudication."
Thus, his contention seems to be that Solis, the defendant in the rule, has title though he has not paid the price.
It is true that Article 2608 provides that the "adjudication is the completion of the sale", but it is now well settled that this is conditional upon the payment of the price and upon compliance with such other conditions as the law imposes. The Supreme Court said in Capital Building Loan Ass'n v. Northern Ins. Co. of New York, 166 La. 179, 116 So. 843, 845:
"Nor will it do to say in a judicial sale that the mere adjudication by the sheriff operates a transfer of the property from the seized debtor to the adjudicatee at such sale.
"Like the promise of sale, the adjudication is a sale in the sense that it gives the right to either the adjudicatee or the seizing creditor to compel compliance with the terms of adjudication.
"The question here presented has been up frequently for consideration, and this court has invariably held that where the purchaser for cash refuses to comply with the terms of sale by paying the price, he is considered as never having been owner.
"In Washburn v. Green, 13 La.Ann. 332, the argument was made that the adjudication gave the purchaser a good title; that if they did not comply with the sale, the curator could either obtain a dissolution or have the property sold at the risk of the purchaser. The court answered the contention by saying that:
"`It is true that article 2586 (2608) C.C., declares that the adjudication is the completion of the sale. But it was never the intention of the lawgiver to say that this consequence should follow, and the sale should be complete where the purchaser had refused to comply with the terms of the sale on demand, and had been decreed by the judgment of a competent tribunal to be in default.
"`Otherwise this would happen; the title would vest in the vendee and would become subject to all legal and judicial mortgages operating upon his property, and the resale would transfer the title of such vendee so encumbered direct to the new purchaser who would not acquire from the succession.'
"The court characterized the contention as absurd. *Page 511 
"Further quoting, the court said:
"`That the title to the property by the act of adjudication does not pass where there is a refusal to comply with the terms of the sale, clearly results from the following decisions, viz.: Municipality No. 2 v. Hennen, 14 La. [559] 588, 590; Mercier v. Sterlin, 5 La. 472; Banks v. Hyde, 15 La. 391; Rowly v. Kemp, 2 La.Ann. [360] 361.'"
But counsel, admitting that this may be true of all judicial sales except those of succession property, insists that in succession sales the rule is different and that the adjudication is absolutely final and completes the sale. He relies upon Article 2623 as providing a special rule. This article reads as follows: "Transfer of title. — The adjudication made and recorded by the sheriff, auctioneer or representative of the succession, is a complete title to the purchaser, and needs not be followed by an act passed before a notary."
The reasons which justify the adoption of the rule set forth in Capital Building Loan Ass'n v. Northern Ins. Co. of New York, supra, from which we have quoted, are fully applicable where the sale is of succession property, and we have no hesitation in saying that Article 2623 no more effects the finality of a sale in a succession in which the price has not been paid than does Article 2608, where any other judicial sale is involved and where the price has not been paid.
The contention that there is a distinction between succession sales and other judicial sales, and that in the case of a succession sale the adjudication absolutely completes the transaction, even if the price had not been paid, seems to have been completely answered by the Supreme Court in Jules Lapene v. Telemaque Badeaux, 36 La.Ann. 194. That case involved an adjudication at a sale of succession property, and the identical question which is here presented was there raised; that though the price had not been paid the adjudication completed the transaction. The court held to the contrary. The Supreme Court in Capital Building Loan Ass'n v. Northern Ins. Co. of New York, supra, commenting upon the Lapene case, said:
"* * * The demand was rejected. The court, after quoting articles 2456, 2608, and 2609 of the Civil Code and the article of the Code of Practice to the effect that if the adjudicatee refuses to pay the price of adjudication to the sheriff, the latter shall expose the thing to sale anew and adjudge it to another person, said:
"`It is apparent from the spirit and letter of those different texts of law, that it is the contract which is perfected by the agreement of competent parties as to the thing and price; but that title to the property is really transferred from vendor to vendee only when the terms of sale have been complied with. * * *
"`The contract of sale does not make the buyer master and possessor, and does not give him a right to enjoy, to use and to dispose of the thing sold, but only a right to demand the delivery of it. This delivery of the thing, together with the payment of the price, consummates the sale and makes the buyer fully master and possessor of the thing, which was the end of the contract of sale.'"
In the Capital Building Loan Ass'n case, supra, the Supreme Court, after citing many authorities, said: "It results from the authorities cited that our conclusion is that the adjudication at the judicial sale to the Dougherty Land Company, the price not having been paid, did not divest the title of Hudson, the insured, and that the insurable interest of the mortgagee was not affected by said adjudication. There being no sale of the property, the mortgagee was not required to give the company any notice of the foreclosure proceedings and of the adjudication."
Counsel for Solis, as we have stated, contends that the right to a resale a la folle enchere applies only where there has been a cash sale and that there was no cash sale here for the reason that the terms of the sale granted to the purchaser thirty days within which to accept title before the designated notary public. The very terms under which the property was sold state that it was to be paid for in cash, and it is obvious that the granting of the thirty days was merely to give to the purchaser time within which the title might be examined, and that he was required to pay the purchase price in cash within thirty days. The word "cash" means at the time of acceptance of title.
Finally, we express doubt as to the good faith of the purchaser in raising the contention which he has presented; that for the technical reasons set forth he should not be required to take title to the property, and yet that the administratrix should *Page 512 
not be permitted to resell it a la folle enchere. The truth of the matter is that it is obvious from the return to the rule that Solis is merely attempting to force the succession to accept in payment of the price of the property an offset or counterclaim which he says that he has against the succession. In his return to the rule we find the following:
"That the said succession was and is, indebted to defendant in a sum greatly in excess of the amount of the purchase price of said property:", and "That, therefore, mover in rule has no right of action, since defendant has never failed but has always been ready and willing to pay the price according to law, and to sign any act of transfer that would properly allow for, and recognize the extinguishment of defendant's debt by compensation, according to law."
The judgment appealed from is affirmed at the cost of appellant.
Affirmed.