**23 So.2d 63**

**In re UNION CENT. LIFE INS. CO.**

**No. 37397.**

June 5, 1945.

Rehearing Denied June 29, 1945.

Theus, Grisham, Davis & Leigh, Monroe & Lemann, and Nicholas Callan, all of New Orleans, for plaintiff and appellant.

Cook, Lee, Clark & Egan and Lee & Emery, all of Shreveport, and R. S. Williams, of Mansfield, for defendants and appellees.

HAMITER, Justice.

The Union Central Life Insurance Company instituted this monition proceeding, praying to be decreed the legal owner of a certain tract of land in DeSoto Parish containing 689 acres. From an adverse judgment it is now appealing. Those contesting its title in this court are the children of Edward D. Thomas, deceased.

While single, in 1901, Edward D. Thomas acquired the mentioned tract. In 1908 he was married to Dora Thomas; and of that union there were born five children, all defendants in this controversy.

On February 5, 1929, the named owner executed a special mortgage covering the property (which belonged to his separate estate) to secure the payment of a loan of $5000 obtained by him from the Union Central Life Insurance Company, hereinafter referred to as Union Central, the indebtedness being payable in twenty-one annual installments.

Thomas died intestate on September 16, 1930; and on January 14, 1931, one E. D. Wrencher applied to the Eleventh District Court of DeSoto Parish for appointment as administrator of the succession, he alleging the existence of privileged and ordinary debts due by the estate which rendered an administration necessary. He further represented that decedent left as his sole and only heirs at law five children, the oldest of whom was 13 years of age and the youngest three years. In due course Wrencher was appointed, and he qualified, as administrator.

On February 5, 1931, the administrator obtained an order of court to sell for cash all of the movables and immovables, belonging to both the separate and community estates, to pay the debts of the deceased and the charges of the succession, and on the same date a commission to sell such property, for cash, issued to him. All of the assets of the succession, except the 689 acres now in controversy, were sold for cash on March 28, 1931.

Because of a misdescription in the advertisement, the 689-acre tract was readvertised for sale on May 9, 1931. On that date, the administrator, to quote from the return on his commission to sell, "offered same for sale at public auction, for cash, according to law, and at said offering Dora Thomas being the last and highest bidder became the purchaser thereof for the price and sum of $4885, that being more than two-thirds of the appraised value * * *."

On May 15, 1931, the administrator's deed covering the tract was executed in favor of the adjudicatee, the instrument reciting in part:

"Now, therefore, the said E. D. Wrencher, administrator of said succession, does by these presents grant, bargain, sell, convey and deliver unto the said Dora Thomas, widow of Ed (Ned) Thomas, deceased, a resident of DeSoto Parish, Louisiana, the hereinabove described property with full subrogation of all rights and actions of warranty against all former proprietors, the sale being made for the price and sum of Forty Eight Hundred Eighty-five & No/100 ($4885.00) Dollars, cash, receipt of which is hereby acknowledged."

Notwithstanding the quoted recital of the deed, Dora Thomas did not pay to the administrator $4885 cash, the amount of her bid. What actually occurred is best shown by the following extract from the administrator's return on his commission to sell:

"The taxes shown on the mortgage certificate of date May 9, 1931, having been provided for out of the funds of the previous sale, the said Dora Thomas retained in her hands the amount of her bid for the purpose of paying the mortgage to The Union Central Life Insurance Company, dated February 5, 1929, and being the second item shown on the mortgage certificate

of date May 9, 1931, the said amount of her bid being the balance due on said mortgage."

On May 25, 1931, the administrator filed a petition alleging that he had disposed of all of the property of the succession; that the 689-acre tract was burdened with a mortgage of $4885 "which is not yet due and that the purchaser retained in her hands said amount to be applied to said mortgage as it becomes due"; and that the funds realized would be used in paying debts as shown by the previously filed provisional account and the attached final account. He prayed for the appointment of a tutor ad hoc to represent decedent's minor children, and that his final account be approved and homologated and he be ordered to make distribution of the assets according to it. The request for the appointment of the tutor ad hoc was not granted pursuant to that petition; but the court, on June 30, 1931, through confirmation of a default, rendered judgment approving and homologating the final account and ordering distribution of the assets according to its provisions. The final account, under the heading "Proposed Disbursements," contained the following entry: "Retained by Dora Thomas, purchaser of real estate, to be used in paying outstanding mortgage—$4885."

On August 27, 1931, in another petition, the administrator alleged the distribution of all succession assets in accordance with the judgment of June 30, 1931; and he again prayed for the appointment of a tutor ad hoc for the children, and, further, that he be discharged as administrator and

his bond cancelled. Under this petition a tutor ad hoc was appointed; and against him the proceeding relative to the discharge was contradictorily conducted, resulting in petitioner's discharge as administrator of the succession.

In April, 1933, Union Central brought suit in the Eleventh District Court of DeSoto Parish, being No. 14,501 on the docket of that court, alleging among other things that on February 5, 1929, it loaned to Edward D. Thomas the sum of $5000 and received as security for the loan a first mortgage on his 689 acres of land; that after the death of Thomas the administrator of his estate, E. D. Wrencher, sold the mortgaged property to Dora Thomas for $4885, the deed stating that the purchase price was paid in cash but the return on the administrator's commission to sell reciting that she retained it for the purpose of paying the mortgage thereon; that without petitioner's being advised "of said paper transfer" a judgment of court was signed approving the final account of the administrator and discharging him; that there is now due to Union Central on said indebtedness, after crediting the same with all unearned interest, the sum of $4626.99, with 8% per annum interest thereon from February 1, 1933, until paid, and 10% as attorney's fees on the principal and interest; and that since default has been made in payment of the two notes due respectively February 1, 1932, and February 1, 1933, petitioner declares, by reason of the acceleration clause of the mortgage, all notes to be due and collectible.

The prayer of the petition of that suit, No. 14,501, is as follows:

"These premises considered petitioner prays that the said Dora Thomas and Edward D. Wrencher be served with a copy of this petition and cited to answer same and on final trial had that your petitioner have and recover judgment against the said Dora Thomas for said sum of Forty-six Hundred Twenty-six and 99/100 ($4626.99) Dollars, with eight per cent per annum interest thereon from February 1, 1933, until paid, with recognition of its first mortgage on the property described in the foregoing petition and that same be ordered seized and sold to pay said indebtedness; in the alternative that it have and recover judgment against her ordering her to pay said indebtedness or surrender said property to be sold.

"Further prays in the alternative for judgment against the said E. D. Wrencher, administrator, for said sum, including interest, attorney's fees and all costs, with recognition of its first mortgage and with full reservation against the surety on his bond and prays that the whole of said mortgaged property be sold for cash without appraisement to pay said indebtedness, including the interest, attorney's fees and all costs and that the proceeds be paid over to petitioner in preference to all other creditors."

Neither of defendants, although duly served, made any appearance; and a default judgment was rendered, the decretal portion of which reads as follows:

"It is therefore ordered, adjudged and decreed that the plaintiff, The Union Central Life Insurance Company, do have and recover judgment against the defendant, Dora Thomas, decreeing her deceased husband, Edward D. Thomas, commonly known as 'Ed (Ned) Thomas', now deceased, to be indebted unto said The Union Central Life Insurance Company in the full sum of Forty-six Hundred Twenty-six and 99/100 ($4626.99) Dollars, with eight per cent per annum thereon from February 1, 1933, until paid and ten per cent on said principal and interest as attorney's fees and that said indebtedness is secured by first mortgage on the following described property lying and being situated in the Parish of DeSoto, State of Louisiana, to-wit: (here 689-acre tract is described).

\*      \*      \*      \*      \*

"It is further adjudged that said property be seized and sold by the Sheriff of the Parish of DeSoto in the State of Louisiana, after legal advertisement and according to law but without appraisement, for cash, and the proceeds, or a sufficient amount thereof to pay this judgment, together with all costs of this suit, is ordered paid to said Union Central Life Insurance Company in preference to all others.

"It is further adjudged and decreed that the said Dora Thomas, third possessor, may at any time before said sale pay to said Union Central Life Insurance Company, or the Sheriff of the Parish of DeSoto, the full amount of this judgment, including interest, attorneys fees and all costs, and in that event the property is to be delivered to her as third possessor free

from the claims of said Union Central Life Insurance Company.

"It is further adjudged and decreed that the demands of The Union Central Life Insurance Company against E. D. Wrencher, administrator, and the personal demands against Dora Thomas, are rejected, the costs of this suit against E. D. Wrencher to be paid by plaintiff."

In accordance with this judgment the property was sold at Sheriff's sale on July 29, 1933, Union Central being the purchaser.

By a deed dated December 29, 1936, Union Central transferred the property to O. O. Cullum; and on the same day Cullum conveyed it to C. L. Rife. On April 2, 1942, Rife deeded it to Union Central.

Those cited in the instant monition proceeding, instituted on January 6, 1943, by Union Central to confirm its title to the property, were Dora Thomas and the five children or heirs of Edward D. Thomas. The petition contains the following averments:

"Your petitioner alleges that it is the legal owner of said property; that it purchased said property at Sheriff's sale in good faith; that it, immediately after its acquisition of the property, took actual possession of same and has been and is now in the open, peaceful adverse and notorious possession of said property.

"That if there are any irregularities in said Sheriff's sale, which is specially denied by your petitioner, then and in that event your petitioner pleads the prescription of two, three and five years as a bar to any informalities or irregularities in said Sheriff's sale."

Dora Thomas, in propria personae, answered attacking the judgment rendered in cause No. 14,501, together with the sale made thereunder, she averring that it was null and void because:

1. No notice or demand required by Code of Practice Article 69 was ever served on her, or upon the minor heirs of Ed Thomas, and no citation was issued in said cause and served through any tutor or other person to represent them;

2. The judgment was ultra petitionem in that the petition prayed for a personal judgment against her in the sum of $4626.99, with interest and costs, whereas the judgment that was rendered decreed that her husband, Edward D. Thomas, was indebted unto Union Central in said amount.

Dora Thomas prayed to be recognized as the owner of the property, entitled to its possession, and further that she have judgment in reconvention for the value of the timber removed from the land.

The heirs, in their answer, adopted the same defenses urged by their mother, Dora Thomas. Additionally they pleaded:

1. The sale of the property by the administrator of their father's estate to their mother was null and void because the order of court required the property to be sold for cash, and the administrator in violation of said order permitted their mother to retain in her hands the amount of her bid to satisfy the mortgage of Union Central;

2. The judgment rendered in cause No. 14,501, along with the sale held thereunder, was null and void because Dora Thomas and the administrator (the defendants in that cause) were without any title or interest in the property in question;

3. Union Central was obligated to account to them for rents and revenues received by it, as well as for timber removed, from the property from July, 1933, to date;

4. The notes held by Union Central are without effect by reason of the prescription of five years liberandi causa.

The heirs prayed that they be decreed the owners of the property and entitled to the possession thereof. In reconvention they prayed for an accounting by Union Central for rents and revenues received by it, as well as for timber removed and sold, from the property from July, 1933, to date.

To the claims for accounting Union Central pleaded the prescription of one and three years.

On the issues thus presented the monition action was tried, and there was judgment in favor of the heirs decreeing:

1. That the sale from the administrator to Dora Thomas and also the Sheriff's sale in cause No. 14,501 were absolute nullities;

2. That the heirs be recognized as the owners of the 689-acre tract and be placed in possession of it;

3. That the plea of prescription of five years liberandi causa urged by the heirs against the mortgage notes be maintained; but that the prescription pleaded by Union

Central under Civil Code Article 3543, against informalities in the sales, be overruled;

4. That the heirs have and recover judgment against Union Central;

a. In the sum of $6000, the value of the timber cut and removed from the property, with legal interest thereon from February 5, 1943; and,

b. In the sum of $4400, for the rental value of the property for ten years from 1933, with legal interest thereon from April 18, 1943.

The instant appeal of Union Central was perfected from the judgment. Dora Thomas has not appealed.

The first question presented for our determination is whether or not the administrator's adjudication to Dora Thomas in 1931 was a valid sale.

It will be recalled that the administrator was ordered to sell the property for cash and that he so offered it. Dora Thomas bid therefor $4885 (stated to be the balance then due on Union Central's mortgage); however, she did not pay any money on that purchase price. Rather, according to the administrator's return on his commission to sell, she "retained in her hands the amount of her bid for the purpose of paying the mortgage." And she is still retaining it for she has since paid nothing on the mortgage indebtedness.

In contending that such adjudication was ineffective and null, counsel for the heirs comment:

" * * * When, therefore, the Administrator sold the Six Hundred Eighty-nine

(689) acres under an order of the Court, and under a commission issued to him to sell for cash to pay debts of the succession, his failure to collect from Dora Thomas the amount of her bid to apply upon the debts of the succession, and especially the mortgage held by the Life Insurance Company bearing against the property sold, and Dora Thomas' failure to pay anything upon her bid, either then or thereafter, resulted in no title passing from the succession to Dora Thomas * * *."

On the other hand, appellant's counsel insist:

"* * * No credit sale is involved. The property here was sold for cash and adjudicated for cash, and the fact is not altered, because subsequent to the adjudication, the obligation of Dora Thomas to pay the mortgage of Union Central out of the price was accepted by the parties at interest as the equivalent of cash. * * *"

In 11 Corpus Juris, page 24, a cash sale is defined as follows:

"A sale for ready money, as distinguished from one on credit; a sale conditioned on payment concurrent with delivery and not a sale on credit; one where delivery and payment are to be concurrent acts and are to be performed at the same instant of time; a completion of the transaction by the execution of a conveyance and the payment of the consideration at the same time, ending and closing the matter by one process; a sale for the money in hand." See also 14 C.J.S., Cash Sale, p. 21.

Obviously, the transaction carried on by the administrator and Dora Thomas does not fall within this definition. The adjudicatee did not pay the amount of her bid on the execution of the administrator's deed; payment and delivery were not concurrent acts, performed at the same instant of time. Hence, there was no compliance with the order of court that the property be sold for cash.

Now what was the effect of that noncompliance?

In Washburn v. Green, 13 La.Ann. 332, it was said:

"The purchaser at a judicial sale acquires such a vested right to the property by the adjudication, that it cannot be divested and taken from him unless he refuses to comply with the terms of the sale. It is in his power by a compliance with the terms of sale, to become the owner by indefeasible title. It cannot be taken from him. In this sense, the adjudication is the completion of the sale. But if the purchaser refuses to comply with the terms of sale, he is considered as never having been owner, saving to the vendor his right to compel a specific performance of the contract."

This court in Heirs of John Ford v. Mills and Phillips, 46 La.Ann. 331, 14 So. 845, 847, with reference to a sale made by an administrator, commented:

"* * * We agree with the district judge that the claim of ownership to the property in litigation, based upon the prescription of 10 years, as founded upon the alleged sale to the Jemisons, is untenable.

The deed of sale upon which this claim rests is radically defective in its recitals and form, and, dehors the deed, we are satisfied that Dean, if he were acting in the matter of the sale under the order of the court, departed from the terms of the order. He was ordered to sell according to law, and the evidence shows that there was no attempt whatever to sell the property for cash, but that it was transferred at once to the Jemisons, upon their furnishing their notes payable at 12 months. The case falls under the operation of the principles announced in the case of Ambrose v. Marsh, 27 La.Ann. 241. See, also, Succession of Fritz, 12 La.Ann. 368."

Counsel for appellant argue that the case just cited is not applicable because in the instant controversy no credit sale is involved. The giving of notes, as was done in that case, was nothing more than the furnishing of written evidence of a promise to pay in the future. The only difference between the two cases is that there the promise was reduced to writing in the form of notes, while here the promise to pay was oral. Surely the fact that Dora Thomas failed to give written evidence of her obligation did not effectuate the transformation of a credit undertaking into a cash transaction.

An administrator's sale was likewise under attack in Succession of Landry, 128 La. 333, 54 So. 870, 876, and therein the court observed:

" * * * He attempted to vest the title of the whole property in Désiré Delcambre, but the attempt, so far as the interest of the succession was concerned, was un-

successful, for the reason that he had prayed for an order to sell the property for cash, and, though the order does not specify the terms, the sale purports to have been made for cash. But the adjudicatee paid nothing in cash or otherwise, and hence, never became the owner of the property. Washburn v. Green, 13 La.Ann. 332. And having no title he conveyed none to Gougenheim, who conveyed none to Louis Delcambre. * * *"

In Etta Contracting Co. v. Bruning, 134 La. 48, 63 So. 619, 621, the following comment was made:

" * * * There is a line of cases whereby it may be regarded as settled (certainly, with regard to judicial sales) that, where the purchaser refuses to comply with the terms of the adjudication, he is considered as never having been the owner. * * *"

And in Nichols v. Bryan, 143 La. 291, 78 So. 562, 563, it was said:

"Has there been a sale? We think not. When a judicial sale is for cash, and the adjudicatee refuses to comply with his bid, there is no sale. * * *"

Capital Building & Loan Association v. Northern Insurance Co., 166 La. 179, 116 So. 843, 845, is pertinent. In that case certain property, encumbered with a mortgage held by plaintiff, was insured against fire in the defendant company. The policy contained a loss payable clause in favor of plaintiff, the mortgage creditor, the effectiveness of which, among other things, depended upon the latter's notifying the insurer of any change of ownership. In the early part of September, 1926, the proper-

ty, in a foreclosure proceeding instituted by plaintiff, was adjudicated to the Dougherty Land Company, Inc.; but the purchaser did not comply with its bid by paying the price to the sheriff, and no deed was executed. Some thirteen days later a fire destroyed the insured building. In the suit that followed, brought by the mortgage creditor to collect insurance according to the terms of the loss payable clause, defendant pleaded that plaintiff had failed to give notice of the change of ownership (the sheriff's adjudication) as it was required to do. In holding that there had been no change of ownership, this court said:

"Nor will it do to say in a judicial sale that the mere adjudication by the sheriff operates a transfer of the property from the seized debtor to the adjudicatee at such sale.

"Like the promise of sale, the adjudication is a sale in the sense that it gives the right to either the adjudicatee or the seizing creditor to compel compliance with the terms of adjudication.

"The question here presented has been up frequently for consideration, and this court has invariably held that where the purchaser for cash refuses to comply with the terms of sale by paying the price, he is considered as never having been owner."

The doctrine of the Capital Building & Loan Association case was followed in Succession of McCausland, La.App., 13 So. 2d 508, 511 (Orleans Court of Appeal). Therein it was stated:

"The reasons which justify the adoption of the rule set forth in Capital Building &

Loan Ass'n v. Northern Ins. Co. of New York, supra, from which we have quoted, are fully applicable where the sale is of succession property, and we have no hesitation in saying that Article 2623 no more effects the finality of a sale in a succession in which the price has not been paid than does Article 2608, where any other judicial sale is involved and where the price has not been paid.

"The contention that there is a distinction between succession sales and other judicial sales, and that in the case of a succession sale the adjudication absolutely completes the transaction, even if the price had not been paid, seems to have been completely answered by the Supreme Court in Jules Lapene v. Telemaque Badeaux, 36 La.Ann. 194. That case involved an adjudication at a sale of succession property, and the identical question which is here presented was there raised; that though the price had not been paid the adjudication completed the transaction. The court held to the contrary. * * *"

To support their contention that the adjudication by the administrator to Dora Thomas was a cash sale, not a credit sale, appellant's counsel cite several decisions in our jurisprudence. One of these is Childs v. Lockett, 107 La. 270, 31 So. 751, 756, which involved the validity of a succession sale of a plantation that was ordered to be made for cash. With reference to that decision, counsel, to quote from their brief, make the following remarks:

"* * * In this case the administratrix as natural tutrix of her minor children purchased the property and was credited

on the sale with the amount which was due her in her capacity as administratrix of the succession. It was urged the sale was not for cash, that it was in violation of the order of court and was null. This contention was rejected by the court in the following language:

" 'The plaintiff is mistaken in affirming that the property was not sold for cash. It was so adjudicated. The fact that after the adjudication the price was not paid in cash is something other and different from its not being sold for cash.'

"The Court then goes on to say:

" 'An adjudicatee at a sale may occupy such relations toward the property sold, or toward the parties who are to receive the money arising from the sale, as will justify the sheriff and in fact sometimes prevent him from enforcing a cash payment of the bid. That is a matter of frequent occurrence.' "

But counsel failed to quote, perhaps inadvertently, the part of the court's opinion which clearly distinguishes that case from one such as the instant controversy. Between the two quoted extracts and in the same paragraph, and separated only by periods, is the following statement of the court: "Had any third person become the adjudicatee, he would unquestionably have been compelled to comply at once with his bid."

In that Childs case, Mrs. Stothard, while administering her deceased husband's succession in the capacity of natural tutrix, petitioned for the sale of the property. An order was accordingly given to sell it at auction for cash. After the required advertisement it was adjudicated to Mrs. Stothard, individually, for $2800. In the Sheriff's deed it was stated "that the purchaser, in compliance with her bid, had paid the Sheriff the sum of $41, in full for all costs, and had, in her capacity as natural tutrix of the minors, administering said succession as such, delivered to him the balance of the purchase price, to-wit, the sum of $2758; the same being payable to her in her capacity as administratrix for said succession." Thus Mrs. Stothard, in her capacity as administratrix of the estate, occupied the position of a creditor with reference to the funds due by her individually in purchasing the property; and it was but natural and proper that she retain the money (except the costs) rather than pay the full purchase price to the Sheriff and have him return it to her, less the costs.

Dora Thomas, in the present matter, had no claim whatever to the purchase price she agreed to pay. The property offered for sale belonged to the separate estate of her husband, and she was neither administratrix of his succession nor tutrix of his minor heirs. She was nothing more than the "third person" referred to in the above quotation who would "have been compelled to comply at once with the bid."

Other cases cited by appellant's counsel are Mason v. Bemiss, 38 La.Ann. 935; Heirs of Simonin v. Czarnowski, 47 La. Ann. 1334, 17 So. 847; and Hamilton v. Hamilton, 130 La. 302, 57 So. 935. In each of them, as in the Childs case, the adjudicatee at the public sale, who retained the amount of his bid, stood in the position of

a creditor toward the funds derived from the sale. Had he paid over the cash to the person offering the property, it would have 'been returned to him immediately. Moreover, in those cases the court recognized the mentioned creditor-debtor relationship, especially pointed it out, and in·most of them indicated that a different conclusion would have been reached had the purchaser been a stranger or third person to the proceeding.

The proceeds of the administrator's -sale in the present case were in no manner due to Dora Thomas; she enjoyed no 'creditor relationship toward them. Hence, as the third person or stranger to the proceeding that she was, it was necessary that she pay cash, as required by the order of court, to obtain a valid title to the property. This she did not do.

Since the sale was attempted to be made upon terms other than that prescribed, it was a sale without an order of court and was absolutely null. Succession of Landry, supra. And being an absolute nullity, it was not cured by the prescription provided for in Civil Code Article 3543. Therefore, in our opinion, the district court correctly ruled that the administrator's sale be set aside.

Next we consider the attack made on the Sheriff's sale of date July 29, 1933, together with the judgment authorizing its holding, at which Union Central purchased the property. The judgment was obtained in suit No. 14,501 on the docket of the Eleventh Judicial District Court of DeSoto Parish, referred to by the parties as an hypothecary action, instituted by

Union Central in April, 1933, for the purpose of foreclosing its mortgage.

As before shown, Union Central alleged in its petition that the notes due respectively February 1, 1932, and February 1, 1933, were unpaid, and it elected to declare, under the acceleration clause of the mortgage, the entire indebtedness to be due and collectible, the balance of which was in the ·principal amount of $4626.99. And it prayed for a judgment against Dora Thomas, and in the alternative against E. D. Wrencher, the former administrator, in the said sum, plus interest and attorney's fees, and for further judgment ordering recognition of its mortgage and the sale of the property to pay the indebtedness. The court rendered judgment, on confirmation of default, decreeing that Dora Thomas' deceased husband, Edward D. Thomas, was indebted to petitioner for the named amount, interest and attorney's fees, and ordering the property sold to pay the mortgage indebtedness by preference and priority.

It is important to notice that in such suit Union Central cited only Dora Thomas and E. D. Wrencher, the former administrator; the heirs of Edward D. Thomas were not made parties defendant. Since the above discussed administrator's sale was an absolute nullity, Dora Thomas was without any title or interest in the property. It was then owned by the Succession of Edward D. Thomas, 'burdened, of course, with the mortgage in favor of Union Central. Nor was the other defendant E. D. Wrencher interested in the property; he was not at that time the

succession representative, having been discharged as administrator previously.

But appellant's counsel contend that even if the title of Dora Thomas was bad, she had the physical possession of the property (there is no evidence in the record relative to this fact); hence, she was a third possessor and the sale in the hypothecary action conducted against her provided a valid title in Union Central. In support of this contention they cite Code of Practice Articles 41, 61 and 68, the last of which reads:

"If the hypothecated property be neither in the possession of the debtor nor of his heirs, but in that of a third person, the creditor has his action against that person, in order to compel him either to give up the property or pay the amount for which it stands hypothecated. This is the hypothecary action, properly speaking."

Then to quote from their brief, counsel argue:

"These articles are too plain for discussion. They impose no requirement that a third possessor must possess by good title, or by any title for that matter, before an unpaid mortgagee can proceed by hypothecary action to enforce his mortgage against the property possessed and it has been so held. In Walker v. Dunbar, 1828, 6 Mart., N.S., 627, defendant sued as a third possessor of a house and lot in a hypothecary action, urged as a second exception that a hypothecary action could not be maintained against a third possessor without an allegation of ownership in him. This contention was rejected by the

Court in the following language: (6 Mart., N.S., at page 627)

" 'According to our code of practice an hypothecary action is a real action—art. 61; and by the 41st article this species of action lies against a possessor of immovable property, where the plaintiff claims the ownership or the possession, or the exercise of some immovable right on property thus possessed. The right of mortgage is so strongly attached to the thing mortgaged, that it may as emphatically be considered an immovable right, as any other which can be imagined to exist on real property. We are, therefore, of opinion, that the second exception was erroneously sustained, nor do we believe that first should have been supported.' "

There is nothing in the opinion of the Walker case to indicate just what relationship defendant held with respect to the property—whether a tenant, third party purchaser, or otherwise. The case was considered on an exception, defendant having pleaded that the plaintiff had not alleged ownership in him. In overruling the exception the court offered the following comment, which is found immediately after the language of the extract quoted above from the brief of appellant's counsel, to-wit:

" * * * The defendant, in one part of the petition, is described as living in the house as a merchant; in another place, there is an allegation that the note on which the suit is founded was given for the price of the house possessed by the defendant. Perhaps either of these clauses would be, in itself, sufficiently descript-

ive of the appellee as a third possessor, but taken together, they leave no doubt of the character in which he is sued."

▪ It must be admitted that the statement just quoted, if not ambiguous and uncertain, is exceedingly general and broad. It is so sweeping that it might possibly include merely a tenant, or even a trespasser. But obviously the third person possessor, or third possessor, as contemplated by the Code of Practice articles, is some one other than a mere tenant, a trespasser, or one having only physical possession.

The definition of a third possessor given in Thompson v. Levy, 50 La.Ann. 751, 23 So. 913, is, "One who buys the mortgaged property without assuming to pay the mortgage."

Furthermore, our announced view is borne out by the case of O'Bryan v. McVey, 26 La.Ann. 608. Therein, McVey was made defendant in an hypothecary action brought to foreclose a mortgage, it being alleged that the affected lands were in his possession. He answered, averring that he was the lessee of Robertson and Avery, the owners of the lands, and asked that they be notified of the proceeding. This the district judge refused to order, and judgment was rendered requiring the property to be seized and sold to satisfy the mortgage, unless the lessee paid the debt within ten days after notification of the judgment. On defendant's appeal, this court ruled:

" * * * Robertson & Avery were the owners of the lands encumbered with the mortgage, and therefore the third possessors thereof, the possession of the lessee being only that of his lessors; and when this fact was disclosed by the answer of McVey, his lessors should have been made parties to the suit. No valid judgment could be rendered in this case without the parties interested being before the court."

The O'Bryan case was cited in State ex rel. Hart v. Burke, 33 La.Ann. 498, as authority for the statement that:

"It is well established by law and jurisprudence that even in proceedings in rem, in which title to the thing vests in a known or unknown owner, an actual or constructive notice to such owner is essentially necessary before condemnation, sale and distribution of proceeds. The rule applies even to mortgages. No adjudication can take place in the absence of the essential parties, whose rights are to be tested. * * *"

▪ Therefore, we conclude that Dora Thomas, in as much as she held no title whatever to the property, was not a third possessor within the meaning of Code of Practice Article 68; whatever possession she had was only that of the heirs of Edward D. Thomas, deceased. And the conducting of the hypothecary action contradictorily with her did not divest those heirs of the property's ownership. From this it follows that the Sheriff's sale in cause No. 14,501, through which Union Central asserts title, was defective and null.

Whether the defect belongs to the category of informalities (not absolute nullities) which are curable by the prescription

of Civil Code Article 3543, is a question we need not determine.

For one to benefit by that prescription he must be in good faith—a bona fide purchaser. In Pike v. Evans, 94 U.S. 6, 10, 24 L.Ed. 40, the United States Supreme Court, in considering Article 3543 of the Louisiana Civil Code, said:

"From these authorities (and others to the same effect could be cited) it is evident that although informalities occurring in a sheriff's proceedings under execution may be good ground for annulling a sale made by him if taken advantage of in time, yet that if the sheriff has authority to sell, and does sell, and execute a deed to the purchaser, the latter, *if a purchaser in good faith,* may set up the prescription of five years under the statute. * * *" (Italics ours)

And in Davis v. Gaines, 104 U.S. 386, 400, 26 L.Ed. 757, the same court, after referring to that article, commented:

"To entitle a party to claim the benefit of this provision of this or any other prescription, it is made necessary by the jurisprudence of Louisiana that he should have acquired the immovable in good faith and by a just title. * * *"

Unquestionably, the purchaser in the instant case, Union Central, was in legal bad faith. When it instituted the hypothecary action (suit No. 14,501), as a result of which the discussed Sheriff's sale was held, it had knowledge of the administrator's sale and of the fact that Dora Thomas acquired no valid title to the property, this being clearly shown by its petition in that action. Therein, it alleged that the Succession of Edward D. Thomas had been opened; that the administrator had sold the mortgaged property to Dora Thomas for the sum of $4885; and that the return on the commission to sell recited that the purchaser retained in her hands the amount of her bid for the purpose of paying the mortgage. Then, in the same petition, it referred to the sale as a "paper transfer by said administrator to the said Dora Thomas." With this knowledge, clearly Union Central should have cited the heirs of Edward D. Thomas, in whom the title then stood, the failure to do which provides the basis for the defect in the Sheriff's sale. Being responsible for that defect it was not a good faith purchaser, and, consequently, it can not profit by the prescription of Civil Code Article 3543.

In addition to annulling and setting aside the above discussed two sales, which rulings we think were correct, the district court decreed that Union Central was indebted to the heirs of Edward D. Thomas in the sum of $10,400. Of this amount $6000 was for timber cut and removed from the property, and the balance represented rental on the tract at $440 per year for a period of ten years. Counsel for appellant, in their brief, do not discuss the merits of those claims; however, the evidence amply sustains their correctness.

Union Central, according to our findings, had physical possession and active control of the tract from the date of the purported Sheriff's sale in suit No. 14,501, notwithstanding that during part of the time one C. L. Rife appeared as the rec-

ord owner of it. Obviously, the title was in Rife's name merely for purposes of convenience. Since 1925 he has been a broker or representative of Union Central, attending to the conditioning and sales of all of its farm lands; and when some of the timber was sold from the tract in question such company guaranteed the title and received the price paid therefor. Then, too, the record contains uncontradicted evidence that the timber cut and removed measured 600,000 feet and was worth $10 per thousand feet, and that a reasonable rental value of the property for the ten year. period during which Union Central possessed it was $4400.

But Union Central, through its counsel, does urge that the claim for timber cutting is barred by the prescription of one year and the claim for rental by the prescription of three years.

The plea respecting the timber is predicated on Civil Code Articles 3536 and 3537 which provide, among other things, that an action to recover for the tortious cutting of timber is prescribed by one year from the date knowledge of the cutting is received by the owner thereof. If it be conceded that those articles are pertinent to the instant case, the record does not show when the timber in question was cut and when the heirs of Edward D. Thomas received knowledge of the cutting. Whether part or all of it was removed prior to the one year period does not appear.

Under the jurisprudence of this state the owner seeking damages for injury to his property, and who had the possession of it on the occurrence of the injury, carries the burden of proving, in connection with the plea of one year prescription, when the loss occurred or when he obtained knowledge of the wrong doing. Citizens' Bank of Louisiana v. Jeansonne, 120 La. 393, 45 So. 367; National Park Bank v. Concordia Land & Timber Co., 159 La. 86, 105 So. 234; Ducros v. St. Bernard Cypress Co., 164 La. 787, 114 So. 654; Urania Lumber Co., Ltd. v. Powers & Critchett Lumber Co., et al., La.App., 166 So. 190. But that rule, we think, is not applicable here for the reason that the heirs of Edward D. Thomas were not in possession of the property when the timber was cut; it was then in the complete control of Union Central. Therefore, as that company was in a better position to know when the damage occurred the burden of proof was with it. The distinction thus made is supported by the language used in Spyker et al. v. International Paper Co., 173 La. 580, 138 So. 109, 111, the court therein observing:

"Plaintiffs rely solely for their case for damages on the theory that part of the timber died before May 2, 1927, and a part died subsequent thereto, and, as the record does not show the amount that died before or after May 2, 1927, that plaintiffs can recover for the whole amount, for the reason that the burden of proof is on defendant company.

"In our opinion, the burden of proof is on the plaintiffs, for the reason that they were in the actual physical possession of the property, individually or through an agent, and were in a better position to know when the damages occurred than was

defendant company. The law is that, when one of the parties to a suit has more means of knowledge concerning a matter to be proved than another, the onus is on him. State v. Bischoff, 146 La. 748, 84 So. 41; Griffin v. Drainage Commission, 110 La. 840, 34 So. 799, 801; Jones v. Texas & P. Ry. Co., 125 La. 542, 51 So. 582, 136 Am.St.Rep. 339."

Since Union Central failed to sustain that burden, it must be held that all of the cutting of timber took place within the mentioned one year period and that the plea of prescription is without merit.

Neither has the claim for rent prescribed by three years under the provisions of Civil Code Article 3538, as counsel for Union Central contend. The claim is not founded on contract, but arises from an obligation imposed by law on the possessor in legal bad faith to pay to the rightful owners rent on the property of which they have been deprived. It is a personal action governed by the prescription of ten years under Civil Code Article 3544. Roussel v. Railways Realty Co., 165 La. 536, 115 So. 742; Lee v. Riggs et al., 13 La.App. 34, 127 So. 114.

Finally, appellant complains that the position of the heirs is unjust and unfair. To quote from the brief of their counsel:

"The heirs want their father's property but not their father's debt. Indeed, they want more. They ask their father's unpaid mortgagee not only to return the property freed of the mortgage debt, but to hand them $10,400 besides. With one voice the

authorities reject such demands as inequitable, immoral and unjust. * * *"

We agree that it would be most inequitable and unjust to restore the land to the heirs, as well as to compensate them for its use and for the timber removed by Union Central, without requiring those heirs to satisfy the unpaid mortgage indebtedness incurred honestly and in good faith by their father. Such satisfaction was not required by the district court. Applicable here, we think, is the moral maxim of the law, which serves as a basis for our rules of equity, that no one ought to enrich himself at the expense of another. Civil Code Article 1965. Accordingly, the money judgment rendered herein against Union Central will be credited with the principal amount of such mortgage indebtedness ($4626.99), together with 8% per annum interest on such amount from February 1, 1933, to April 18, 1943; and the plea of prescription of five years liberandi causa, directed by the heirs to the mortgage notes, will be overruled. Also, the judgment will be further credited with all taxes paid on the property by Union Central, or its representative, during the ten year period for which the heirs are receiving rent. The record, however, does not disclose the amount of such taxes, and for the purpose of determining that item the case will have to be remanded.

Since the appeal was taken in this cause one of the minor children of Edward D. Thomas, deceased, has been emancipated by judgment of court, and, further, a new dative tutor has been appointed for another.

By appropriate proceedings those persons have been made parties to the appeal. Because of this change to be made in the district court's decree, and of the several other changes pointed out above, we deem it necessary, in the interest of clarity, to and we shall recast the judgment.

For the reasons assigned judgment is hereby rendered in favor of the heirs of Edward D. Thomas, deceased, namely, Edna Thomas Stegall, Edward A. Thomas, Theda Bara Thomas, Lillie Doris Thomas (the last two being emancipated minors), and the minor, Evie Laverne Thomas (represented by Ernest Wharton, dative tutor), and against the Union Central Life Insurance Company and Dora Thomas, decreeing to be null and void the sale from the administrator of the Succession of Edward D. Thomas, deceased, to Dora Thomas, in proceedings entitled Succession of Edward (Ned) D. Thomas, deceased, No. 13,869 on the civil docket of the Eleventh Judicial District Court of DeSoto Parish, the act being recorded in Conveyance Book 96, page 116 of the records of DeSoto Parish; and also decreeing to be null and void the sale by the sheriff to the Union Central Life Insurance Company in suit entitled Union Central Life Insurance Company v. Dora Thomas et al., No. 14,501 on the above mentioned civil docket, the act being recorded in Conveyance Book 102, page 397 of the records of DeSoto Parish.

It is further ordered, adjudged and decreed that the above named heirs of Edward D. Thomas, deceased, be recognized as the owners, and as such be sent and put

in possession, of the properties described in said acts of sale and as follows:

"All that portion of the following described tract of land lying west of the H. E. & W. T. Ry. Company's track; beginning at a point 15-1/3 chains South of the Southwest corner of the Northwest Quarter (NW¼) of Section Six (6), Township Thirteen (13) North, Range Fifteen (15) West, running thence South 24-2/3 chains; thence East 120 chains; thence North 24-2/3 chains; thence West 120 chains to the place of beginning.

· "Also the Northeast Quarter (NE¼); the North Half (N½) of the Northwest Quarter (NW¼), the Southwest Quarter (SW¼) of the Northwest Quarter (NW¼), and the Northwest Quarter of the Southwest Quarter (NW¼ of SW¼) of Section Seven (7), and the West Half of the Northwest Quarter (NW¼) of Section Eight (8) all being in Township Thirteen (13) North, Range Fifteen (15) West.

"Also beginning 13-1/2 chains South of the Northwest corner of the Northeast Quarter (NE¼) of the Southeast Quarter (SE¼) of Section Twelve (12), Township Thirteen (13) North, Range Sixteen (16) West, running thence South 26-1/2 chains; thence East 20 chains; thence North 26-1/2 chains.; thence West 20 chains to the place of beginning;

"the land described containing in all 689 acres, more or less, lying and situated in the Parish of DeSoto, State of Louisiana."

It is further ordered, adjudged and decreed that the several and various pleas of

prescription filed by Union Central Life Insurance Company and by the heirs of Edward D. Thomas, deceased, be and they are hereby overruled.

There is further judgment rendered in favor of the named heirs of Edward D. Thomas, deceased, and against the Union Central Life Insurance Company:

a. In the sum of $6000, the value of the timber cut and removed from the property above described, with legal interest thereon from February 5, 1943; and

b. In the sum of $4400 for the rental value of said properties for ten years from 1933, with legal interest thereon from April 18, 1943;

this money judgment, however, being subject to a credit of $4626.99, together with 8% per annum interest thereon from February 1, 1933, to April 18, 1943, and subject to a further credit of the total amount of all taxes paid on the above described properties by Union Central Life Insurance Company, or its representative, during the ten year period for which the heirs are receiving rent.

It is further ordered, adjudged and decreed that the case be remanded to the district court for the restricted purpose of hearing evidence on, as well as determining and fixing, the total amount of the mentioned taxes for which credit is herein allowed.

All costs of the district court shall be paid by Union Central Life Insurance Company, and the costs of this court shall be paid by the heirs of Edward D. Thomas, deceased.

ROGERS, J., dissents.

O'NIELL, C. J., dissents from the holding that the sale to Mrs. Dora Thomas was null because of her failure to pay the mortgage debt due to the Union Central Life Insurance Company, for the payment of which debt she reserved the price for which she bought the property from the administrator of her husband's estate on May 9, 1931, and therefore dissents from the holding that Mrs. Thomas was not a third possessor, in the meaning of article 68 of the Code of Practice, when the Union Central Life Insurance Company proceeded against her by the hypothecary action and bought the property at the sheriff's sale, on July 29, 1933, to satisfy the debt.

HIGGINS; J., takes no part.