CUTRER, Judge.
This is an appeal from the dismissal of a rule to show cause why joint auctioneers should not be ordered to complete and execute a proces verbal.[1] The trial judge stated the facts as follows:

“Plaintiff and defendant were once married to each other and during the marriage they acquired certain movable and immovable property which belonged to the community of acquets and gains existing between them. They also incurred certain debts.

“Defendant, Janice Miller Deshotels, (now Janice Miller Veltin) filed a petition for divorce on June 19, 1979, and a judgment of divorce therein was rendered in her favor on November 13, 1979, and, of course, the community of acquets and gains between them terminated on June 19, 1979, the date of the filing of the suit for divorce.

“On February 27, 1980, plaintiff James Dowell Deshotels filed suit for partition by licitation, praying that an inventory of the property belonging to the community be taken, and that in due course, a licensed auctioneer be appointed to sell the property at public auction, according to law.

“Mr. Raymond Lejeune, a notary public of Evangeline Parish, was appointed by the court on February 27,1980, to take an inventory of all the property belonging to the community. The court, in the same order, authorized and ordered Paul C. Tate, a licensed auctioneer to sell the property owned in indivisión by the parties, at public auction, for cash, and to account to the court and the parties for the whole. (Emphasis added.) On July 17, 1980, the inventory of Community Property was returned by the Notary and filed into the record herein.

“On June 10, 1980, on joint motion of the parties, the court appointed Paul C. Tate and Lawrence B. Sandoz, Jr., joint auctioneers to effect the sale, and partition the proceeds of six (6) certain tracts of property more fully described in the motion and order. The property to be 
*22
sold at public auction was duly advertised in the Acadian Press, and the sale, at public auction, took place on July 30, 1980.

“It was at the auction sale that the present controversy began. There were five (5) tracts of country property totaling two hundred and ninety six (296) acres of farm land, and one tract, tract no. 6, which contained two (2) acres of land and a large house which had been the family home.

“Mr. Tate commenced the sale after reading the judicial advertisement, certificate of mortgage, etc. He advised those who attended, and prospective bidders, that the 6 tracts of land would be sold separately, and thereafter they were to be sold in globo. At the sale, according to the testimony adduced at the trial of the rule herein, Mrs. Janice Miller Desho-tels bid the sum of $99,000.00 for the home and two acres of land. Mr. Desho-tel bid $100,000.00. Thereafter, the bidding continued, and Mr. Deshotels bid a total of $315,000.00 for the five tracts. Then, as the court understands, the five (5) tracts of land were offered for sale in globo, and Mr. Deshotels bid the sum of $315,000.00, and Mr. Tate, who was the auctioneer then crying the property, adjudicated all the property to Mr. Desho-tels for $415,000.00.

Some confusion occurred at about this time. Dr. Charles E. Fontenot was present, and it is alleged he had misunderstood the procedure then being followed, and indicated to Mr. Sandoz, the co-auctioneer, that he wished to bid. Mr. Tate refused. Then, under protest and objection, Mr. Tate proceeded to re-offer the five (5) tracts of country property for sale in globo. Dr. Fontenot and Mr. Deshotels were apparently the only bidders. Dr. Fontenot stopped bidding at $590,000.00 for all of the property, and Mr. Deshotels continued bidding and became the purchaser of all the property for $595,000.00.”

After the auction Mr. Tate prepared a proces verbal for execution by himself and Mr. Sandoz, as auctioneers. Mr. Sandoz refused to sign the proces verbal because the husband had not paid, in cash, the purchase price bid at auction. On October 5, 1981, the wife filed a rule for resale, at auction, of the property originally sold to her husband. Mr. Deshotels’ failure to pay the amount of the sale in cash to the auctioneers in compliance with LSA-C.C. art. 2611 was given by Mrs. Deshotels as the basis for her request for a resale.
Deshotels answered, his wife’s rule. Deshotels averred that because he had assumed certain debts of the community he could offset any cash price owed because of his bid at the auction.
After hearing the trial judge dismissed the wife’s rule for a resale without reasons.
The husband then filed a “motion for rule” containing the following allegations:

“On motion of plaintiff, James Dowell Deshotels, and upon showing that, at the auction sale held on July 30, 1980, the auctioneer adjudicated to plaintiff, for the price of $415,000.00, the property described in Exhibit A, attached hereto, and upon further showing that plaintiff has arranged to assume debts of the community of acquets and gains in the amount of $415,000.00, in satisfaction of said price.”

The husband then asked that his wife be ordered to show cause why the joint auctioneers should not be ordered to complete and execute a proces verbal. The husband amended this rule to ask the wife to also show cause why: (1) The sale price of the property sold at public auction should not be declared to be $415,000.00; (2) certain debts should not be declared community debts; and (3) the husband’s personal assumption of the debts, in (2) above, should not be declared good and valid consideration in satisfaction of the price of the property the husband purchased at auction.
The trial judge made the following findings of fact: The sale of the property was to be for cash; the adjudicatee did not pay, or offer to pay, the purchase price in cash; and there never was a transfer of title to adjudicatee. The trial court rendered judg *23 ment dismissing the husband’s rule. The husband appeals. We affirm.
The substance of the husband’s contention on appeal is that, by the assumption of the alleged community debts in an amount equal to the bid, he was released from the cash payment of the bid price. He contends that the law of Compensation and Confusion (LSA-C.C. arts. 2207 and 2217) applies. We disagree.
LSA-C.C. art. 2207 defines compensation as follows:

“When two persons are indebted to each other, there takes place between them a compensation that extinguishes both the debts, in the manner and cases hereafter expressed.”

Compensation (or set-off) can be available to the husband only in the event he and his wife were creditors and debtors of each other. The community debts owed herein are owed to third parties. The assumption of the wife’s obligation for her share of these debts does not afford the husband a set-off as against the creditors, third parties. For this reason, the law of compensation (set-off) cannot apply.
Confusion is defined in LSA-C.C. art. 2217 as follows:

“When the qualities of debtor and creditor are united in the same person, there arises a confusion of right, which extinguishes the obligation.”

Where the husband assumes the payment of alleged community debts, he does not create a situation where the “qualities of debtor and creditor are united” in himself. By assuming the debts, the husband would become the sole debtor to the third person creditors of the community. Thus, the quality of debtor and creditor are not united and no confusion is confected between the husband and the community creditors.
In Re Union Cent. Life Ins. Co., 208 La. 253, 23 So.2d 63 (1945), and the cases cited therein, addressed the question of the validity of a “cash sale” at auction when the money was not paid. Ultimately the Supreme Court held that where the successful bidder retained the amount bid to pay mortgage installments as they came due, as opposed to paying the auctioneers a lump sum, there was no sale in compliance with the order and the sale was absolutely null. Citing earlier cases, the court stated:

“In Etta Contracting Co. v. Bruning, 134 La. 48, 63 So. 619, 621, the following comment was made:

‘There is a line of cases whereby it may be regarded as settled (certainly with regard to judicial sales) that, where the purchaser refuses to comply with the terms of the adjudication, he is considered as never having been the owner.’

And in Nichols v. Bryan, 143 La. 291, 78 So. 562, 563, it was said:

‘Has there been a sale? We think not. When a judicial sale is for cash, and the adjudicatee refuses to comply with his bid, there is no sale.’ ”

We conclude that the assumption of the community debts would not release the husband from the payment of cash for the bid price. The trial court correctly dismissed the husband’s rule as the sale herein was a nullity for the lack of payment.
Since there are other issues, pertaining to the settlement of the community pending in the trial court, we shall remand for further proceedings.
The judgment of the trial court dismissing the husband’s rule to order the joint auctioneers to complete the sale is affirmed. The case is remanded to the district court for further proceedings in accordance with law.[2] Costs of this appeal are assessed to James D. Deshotels-appellant.
AFFIRMED AND REMANDED.

. Appellee moved to dismiss the appeal on the grounds that the judgment appealed from was a non-appealable interlocutory judgment. This court held a judgment which did determine finally the rights of the parties was an appeala-ble judgment. The motion to dismiss was denied. Deshotels v. Deshotels, 419 So.2d 539 (La.App. 3rd Cir.1982).

. We note that the Louisiana Legislature, in its last session, passed Act No. 439 which establishes new, specific procedures for the partition of community property. 1982 Acts of the Legislature, Act. No. 439.